Charley Luther PIKE, Appellant,

v.

Fred R. DICKSON, Warden, California State Prison, San Quentin, California, Appellee.

No. 18470.

United States Court of Appeals Ninth Circuit.

Oct. 18, 1963.

Rehearing Denied Nov. 22, 1963.

Henry A. Dietz, Saratoga, Cal., for appellant.

Stanley Mosk, Atty. Gen., of California; Albert W. Harris, Jr., Robert R. Granucci, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before POPE, HAMLEY and DUNIWAY, Circuit Judges.

POPE, Circuit Judge.

The appellant Charley Luther Pike, convicted of first degree murder in a California Superior Court and sentenced to death, filed in the court below his petition for writ of habeas corpus alleging that his sentence of death was the result of proceedings in the State court which had denied him due process of law. No question is raised as to the appellant having exhausted his State remedies in the light of the decision in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

The petitioner filed his petition in the court below in propria persona and he was granted leave to proceed in forma pauperis. The petition, although couched in good English, is an inexpertly drawn legal document. Petitioner stated that he was not versed in the law and that his education did not go beyond the seventh grade.

In view of these circumstances it is appropriate that the petition be read in the manner suggested by Chief Judge Sobeloff in United States v. Glass, 4 Cir., 317 F.2d 200, 202, as follows: "Where the layman's papers clearly show what he is driving at, it is usually in the interest of justice and may in the long run save time to temper the reading of the papers with a measure of tolerance." This court has applied the same rule of construction of a layman's pleadings in Thomas v. Teets, 9 Cir., 205 F.2d 236, 238.[1]

Pike's petition complains of the conduct of the prosecuting attorney at his trial in two respects. The first complaint has to do with the prosecuting attorney's mode of questioning prospective jurors on their *voir dire* examination with respect to their willingness to join the other jurors in bringing in a verdict of death. He then alleges that what he asserts to have been an unfair method of questioning jurors was followed in the final argument of the prosecutor by an improper emphasis upon the answers giv-

---

1. "Thomas' application being drawn by an inexperienced layman is to be construed to give its allegations effect, though inartificially drawn. Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761; Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 92 L.Ed. 1356."

en on *voir dire*. The petition's allegations in this respect are set forth in the margin.[2]

The second respect in which petitioner attempts to allege a denial of fair trial relates to a part of what is asserted to have been a portion of the closing argument of the prosecutor to the jury. The allegation is that the remarks of the prosecutor to the jury operated to deprive petitioner of the right to effective aid of counsel and to deny him a fair trial. This portion of the petition is set forth in the margin.[3]

What the petitioner was attempting to claim was that the way the prosecutor interrogated the jurors as to their attitudes toward the imposition of the death penalty, and the prosecutor's closing remarks to the jury were so extremely prejudicial to the rights of the petitioner that they operated to deny him a fair trial and to deprive him of due process of law. It is noted also that the petitioner challenges as incorrect or inaccurate the California Supreme Court's account of what transpired at the trial.

When this petition, which prayed for an order to show cause why the petition should not be granted, was presented to the trial judge, the judge made an order simply reciting that he had carefully examined and considered the petition and found it without merit. The court then added "It is to be noted that the matters urged upon this court have been fully considered by the Supreme Court of the State of California in People v. Pike, 58 A.C. 69, * * * which Court reached the same conclusion. It is to be noted that certiorari was denied by the Supreme Court of the United States." See People v. Pike, 58 Cal.2d 70, 22 Cal.Rptr. 664, 372 P.2d 656. Accordingly the pe-

2. "IX—At the outset of the trial, the District Attorney, on voir dire examination, made sure that the jury finally selected would bring in the death penalty against petitioner. He told the prospective jurors that:

"(a) He wanted assurance that each juror would join the other jurors in giving the death penalty to petitioner;

"(b) He was more mature and experienced than the individual jurors, and in the light of that experience he was demanding the death penalty at this early stage of the proceedings.

"(c) Prospective jurors already examined and seated in the jury box had appeared to commit themselves to voting for the death penalty. Would the juror now being questioned be willing to join the others in bringing in a verdict of death?

"X—in his closing arguments, both on the guilt and penalty phases, the District Attorney told the jury:

"(a) They had been advised on *voir dire* that he would demand the death penalty and they had assented to it.

"(b) His office requires him to be fair, honest and just. His interest in justice and fairness compelled him to demand the death penalty.

"(c) The death penalty would not deter criminals as vicious as petitioner, but it did deter others."

3. "In the District Attorney's closing arguments to the jury petitioner was deprived of the right to effective aid of counsel and the right to a fair trial by the reprehensible blow administered by the prosecution:

"(1) He stated to the jury that the Public Defender could and would knowingly and ethically permit petitioner to commit perjury;

"(2) Petitioner's story was made out of 'wholecloth' and the Public Defender could not be believed because it was his duty to permit petitioner to lie.

"With respect to this the California State Supreme Court said that the District Attorney's conduct was '* * * not to be condoned' (People v. Pike, supra). However, the Court felt that the argument was made in response to a statement made by the Public Defender. The record will disclose that the Public Defender did make a short statement, but the District Attorney's argument covering several pages can scarcely be said to be justifiable reply. Moreover, petitioner had a constitutional right to effective aid of counsel.

"It is submitted that this conduct by the prosecutor and the trial Court, taken together with the other occurrences referred to, constitutes a denial of a fair trial, at least on the penalty phase, to petitioner; a deprivation of his liberty without due process of law, and, if the petitioner is executed, will result in a deprivation of his life—all contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States."

tition for writ of habeas corpus was denied and dismissed.

■ At the outset it is to be noted that the procedure adopted by the trial court was inadequate. Assuming, as we do, that the petition failed completely or adequately to set forth a claim, yet it is entirely clear that the petition was susceptible to amendment. The settled rule with respect to a pleading which is inexpertly drawn and fails to set forth facts in a proper manner was stated authoritatively in Conley v. Gibson, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80; as follows: "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. * * * The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." [4]

■ Far from affording any opportunity for an amendment of the petition, the court proceeded to pass upon its merits upon the basis of the decision of the Supreme Court of California rendered upon Pike's mandatory appeal. It is plain that petitioner had the right to challenge the State Supreme Court's version of the facts about the mode of his trial.

With all of its ineptitude the petition was plainly aimed at making two points: the first, a question of fact, was its assertion that what happened at petitioner's trial was not as recited in the opinion of the California Supreme Court but rather as set forth in the petition; the second, was that the misconduct of the prosecutor alleged in the petition was so egregious as to deny the petitioner a fair trial, which is another way of saying that he was deprived of due process of law.

The clear impropriety of relying upon a State Supreme Court's decision as a conclusive determination of questions of this kind is too well settled to require argument. United States ex rel. Jennings v. Ragen, 358 U.S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296, is a case almost precisely in point. There petitioner claimed denial of constitutional rights through the interjection in the evidence of a confession which he alleged was coerced through physical mistreatment. The district court dismissed the application without a hearing. The Supreme Court noted that the district court in dismissing the application "simply relied on the facts and conclusions stated in the opinion of the Supreme Court of Illinois." This was held to be error and that dismissal by the district court should not have taken place without that court "first satisfying itself, by an appropriate examination of the State court record, that this was a proper case for the dismissal of petitioner's application without a hearing, in accordance with the principles set forth in Brown v. Allen, 344 U.S. 443, 463–465, 506."

The reason why a State court's adjudication of the facts relating to a claim of denial of constitutional right cannot be final or binding upon a federal court in a habeas corpus proceeding was noted in Brown v. Allen, supra, 344 U.S. at p. 500, 73 S.Ct. at 443, 97 L.Ed. 469, as follows: "But the prior State determination of a claim under the United States Constitution cannot foreclose consideration here of such a claim, else the State court would have the final say which the Congress, by the Act of 1867, provided it should not have. * * * *"

This court had occasion to discuss that proposition in Cranor v. Gonzales, 9 cir., 226 F.2d 83, 93.

4. Conley v. Gibson was a civil action; the same rules relating to amendments apply to habeas corpus applications. Title 28, U.S.C. § 2242. See Price v. Johnston,

334 U.S. 266, 291, 68 S.Ct. 1049, 92 L.Ed. 1356, and Egan v. Teets, 9 Cir., 251 F.2d 571, 577.

Another question, one of law, is whether the actual conduct of the prosecutor at petitioner's trial was sufficiently prejudicial so as to prevent a fair trial.

Here again the federal court is not bound by the State court's conclusion that the conduct was not prejudicial. In Chavez v. Dickson, 9 cir., 280 F.2d 727, 737, this court had occasion to say upon this point: "A question of law is presented as to whether the trial court error was so prejudicial as to deprive Bates of due process of law. As to this the federal district court was not bound by the state court conclusion that the error was not prejudicial."

The contention of the appellee Warden here is that the asserted misconduct on the part of the district attorney would amount to no more than recital of mere errors of law in a state criminal trial. It is said that this does not raise a federal question and hence there would be no basis for federal habeas corpus relief, citing Buchalter v. People of State of New York, 319 U.S. 427, 431, 63 S.Ct. 1129, 87 L.Ed. 1492, and Lisenba v. California, 314 U.S. 219, 226 to 229, 62 S.Ct. 280, 285 to 286, 86 L.Ed. 166. This, we think, overlooks the strong current of present judicial authority respecting the sort of errors which are so serious as to amount to a denial of a fair trial and of due process of law.

█ It may be conceded that a mere error committed in the course of a trial would not, under ordinary circumstances, be deemed so fundamental as to measure up to a deprivation of due process; but, as always, circumstances alter cases, and the presently recognized rule appears to be that errors which operate to affect the fairness of a jury's consideration of a case may be so egregious as to amount to a denial of a fair trial. The test to be applied in determining whether errors are so egregious was stated by us in Chavez v. Dickson, supra, as follows: "It is only where criminal trials in state courts are conducted in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice that due process is offended and that federal court interference is warranted," 280 F.2d at 735, citing Lisenba v. California, supra. And see cases cited in our footnote to that statement.

Illustrating the application of such test is Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751. In that case complaint was made of the failure of the state trial court to grant a second change of venue after a showing by the accused of extensive and widespread newspaper and other publicity calculated to create an advance opinion as to the accused's guilt in prospective jurors in the area where the crime was committed and where the accused was brought to trial. The Court said: "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." 366 U.S. at 722, 81 S.Ct. at 1642, 6 L.Ed.2d 751.[5]

The conduct of the prosecutor at the trial, attempted to be described in the petition, could possibly, amount to a denial of due process. Before we can an-

---

5. Unquestionably in most cases failure to grant a change of venue raises only a question of state procedural law, and the party denied the change of venue can claim no more than reversible error. But in certain cases denial of a change of venue may result in a trial "in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice that due process is offended." Illustrations of this, in addition to Irvin v. Dowd, supra, are Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663, and United States ex rel. Bloeth v. Denno, 2 Cir., 313 F.2d 364.

That an impartial jury is an essential to a "fair and impartial trial" and to meet the requirement of due process is discussed generally in Baker v. Hudspeth, 10 Cir., 129 F.2d 779, 781–782. A recent case, applying the same rule, is Lane v. Warden, 4 Cir., 320 F.2d 179. (We do not find occasion here to indicate whether we would approve the result reached in the Lane case, upon its facts.)

swer the question as to the petitioner's right to the writ we would have to know first, exactly what happened at the trial, in the respects mentioned, and second, precisely what did the prosecutor do and say; and then we would have to determine and conclude whether that conduct was so egregiously prejudicial as to deny the petitioner a fair trial.

The error on the part of the court below was in its failure to inquire into the facts so as to ascertain whether there was in fact prejudice and then whether that prejudice was so serious that it amounted to a denial of due process.

It must be conceded that the trial court, upon examination of the petition, and comparing it with the statements of the California Supreme Court concerning what the record shows transpired at petitioner's trial, would be justified in feeling that the petition is probably untrue. The district judge was aware, as are we, of the California courts' leadership in protecting the rights of persons accused of crime, as well as of California's "forward treatment of indigents."[6] But such a feeling does not warrant a summary dismissal of such a petition. What too often happens in such cases is described in the dissenting opinion in Simpson v. Teets, 9 Cir., 239 F.2d 890, at 894–895, reversed 353 U.S. 926, 77 S. Ct. 720, 1 L.Ed.2d 722, where it was said: "The feeling, supported by the statistics, that the chances are 740 to 1 that such an application is without merit, the knowledge that it may even be a contrived invention, should not deter any judge from shouldering this burden of combing the facts in every such case upon the chance that it may be one of those 13⁄100ths of 1 per cent that may have

some merit. Granting that these applications, all taken together, present a task for the courts that is hard to bear, yet it is a proud tradition of our system that every man, no matter who he may be, claiming denial of due process is entitled to have that claim examined. Making this examination, doing this combing at the earliest possible stage in the litigation may well help ameliorate this serious condition in the federal courts."[7]

Upon remand of this case to the trial court the latter's task would obviously be a simple one. There appears to be no question as to the accuracy of the State court record.[8] All that would be needed to ascertain the actual facts would be for the district judge to do what was required in Jennings v. Ragen, supra, that is to say, make an appropriate examination of the State court record. Should the court be of the view that the petition requires amendment, permission to make such an amendment should be granted.

We note that the California Supreme Court's opinion does not set out the voir dire examination of jurors in full. It gives what it calls a "representative sample". Upon remand the district judge will have an opportunity to read the examination at length and in its entirety; and he may then determine and appraise, for himself, whether the prosecutor's procedures were so prejudicial as to effect a denial of a fair trial.

That same opinion contains a statement as follows: "Finally, it is observed that neither defendant made timely objection to the subject statements and questions of the deputy district attorney, and hence they 'cannot now complain for the first time as, upon objection, any danger that

6. For example, see People v. Cahan, 44 Cal.2d 434, 282 P.2d 905. The quotation is from Douglas v. California, 372 U.S. 353, 355, 83 S.Ct. 814, 9 L.Ed.2d 811.

7. Cf. Walker Distributing Company v. Lucky Lager Brewing Company, 9 Cir., 323 F.2d 1, where, speaking of the possibility that a complaint is a sham, or a "strike suit" we said: "One cannot know about such matters by a mere ex-

amination of pleadings." 323 F.2d at p. 8.

8. In Chavez v. Dickson, supra, the accuracy of a certain transcribed statement was challenged by the petitioner and we held that it was there the duty of the district judge to call for records from which this was made and to ascertain for himself the accuracy of the transcription.

the jury might have misunderstood their duty could have been corrected by proper instructions.' " 58 Cal.2d at 88, 22 Cal. Rptr. at 674, 372 P.2d at 666. We cannot say at this time whether upon remand the trial court may be faced with the problem here mentioned. If the trial court finds that the record of petitioner's trial does not bear out his allegations, then that will put an end to this proceeding. The court may never have occasion to decide whether there was a failure to object as stated in the Supreme Court's opinion, or whether such a failure to object would constitute a bar to federal habeas corpus. For that reason we find no occasion at this time to rule upon the question whether any such failure to object, in the circumstances of this case, constitutes in itself a bar to the relief sought by petitioner.[9]

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

9. To deal with that matter would require a study as to what bearing the case of

Fay v. Noia, supra, has upon such a situation.