Jean L. **CHESTER**, Appellant,

v.

The **PEOPLE OF** the **STATE OF CALIFORNIA**, Appellee.

No. 19773.

United States Court of Appeals
Ninth Circuit.

Jan. 27, 1966.

Browning, Circuit Judge, dissented in part.

Paul C. Jess, Sonoma, Cal., for appellant.

Thomas C. Lynch, Atty. Gen. of California, Doris H. Maier, Asst. Atty. Gen., Sacramento, Cal., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and MATHES, District Judge.

HAMLEY, Circuit Judge:

Jean L. Chester, a California state prisoner, appeals from a district court order denying, without hearing, his application for a writ of habeas corpus. A certificate of probable cause was entered by a judge of this court, thereby enabling this court to entertain the appeal. See 28 U.S.C. § 2253 (1964). Chester appeared *pro se* in the district court but counsel

has been appointed to represent him on this appeal.

Chester argues that the district court erred in failing to issue a show cause order to determine whether his allegations of fact are disputed, and in failing to hold an evidentiary hearing as to any disputed facts. It is also contended that if reliance is placed upon state court findings as to any disputed facts, the district court erred in accepting such state court findings without first examining the state court record.

■■ The principles to be applied in considering this argument are well established. The district court should not, in lieu of an evidentiary hearing, rely on a state court finding of fact, without first ascertaining that the state court evidentiary hearing was full and fair. Townsend v. Sain, 372 U.S. 293, 319, 83 S.Ct. 745, 9 L.Ed.2d 770. The adequacy of the state court hearing may be established only by a concession to that effect by the applicant or by examination of the state court record, an examination of a state court appellate opinion being insufficient. Jennings v. Ragen, 358 U. S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296; Pike v. Dickson, 9 Cir., 323 F.2d 856, 859.

One ground for relief asserted in Chester's application is that at the time of the preliminary examination in justice court on June 16, 1947, on a charge of violating California Penal Code, § 4502 (possession of a deadly weapon by a state prisoner) he did not have an attorney and no one told him that he was entitled to be represented by an attorney.

As to this ground the district court accepted the findings of the Supreme Court of California in a state habeas corpus proceeding brought by Chester. In re Chester, 52 Cal.2d 87, 338 P.2d 431. The California Supreme Court determined, on the basis of findings prepared after an evidentiary hearing, by a referee appointed by that court, that Chester was not advised of his right to counsel at that preliminary examination, but that he was fully advised of such right at his arraignment in the justice court on May 28, 1947, and that Chester waived counsel at that arraignment.

Since the district court thus accepted as true, Chester's allegations that he did not have counsel at the preliminary examination and was not advised of such right, it was not necessary for the court, as to this ground, to hold an evidentiary hearing or call for and examine the state court record. The question remains whether, in view of the facts so established, the district court erred in holding that this asserted ground for relief is without merit.

■ An accused has a constitutional right to representation by counsel at a preliminary examination in a state court if, under the facts of the particular case, the examination is a critical stage in the criminal proceeding. Wilson v. Harris, 9 Cir., 351 F.2d 840, decided October 19, 1965.

The record of the preliminary hearing, which was designated as an exhibit and attached to the application for a writ, shows that at the preliminary examination in question two witnesses testified for the state, one of them being cross-examined by Chester. The defendant did not testify, or offer any testimony, nor did he enter a plea or make any statement tending to incriminate himself. The cross-examination which he conducted did not uncover any fact disadvantageous to him. The state court record before us further shows that on June 21, 1947, Chester was arraigned in superior court, at which time he pleaded guilty. Chester did not allege that this plea was in any way induced by the proceedings at the preliminary hearing, or by any disadvantage to him in not having legal representation at that hearing.

■ Under the stated facts the preliminary examination on June 16, 1947 in justice court was not a critical stage of the criminal proceeding and the failure to provide counsel or advise Chester of his right to counsel at that hearing did not deprive him of a constitutional right. See Wilson v. Harris, *supra.* According-

ly, the district court did not err in rejecting this ground for relief.[1]

The memorandum and order of the district court indicates ˙ that the court thought that this was the only ground upon which relief was sought. This is not correct since Chester advanced two additional grounds in his application, namely: (1) at the time of his arraignment in the state superior court on the section 4502 charge, Chester pleaded guilty and was sentenced without the assistance of counsel, and without waiving his right to counsel; and (2) he pleaded guilty to that charge on the representation of the district attorney, conveyed to him by his aunt, that if he would do so, he would not have to spend any more time in prison in addition to the time he was already serving for statutory rape.

■ The district court has not passed upon these additional questions, the second of which was not discussed in the California Supreme Court opinion in In re Chester. It is therefore necessary to remand the case so that these additional grounds for relief may be considered.

■■ In his brief on appeal, Chester advances several additional reasons for reversal which were not presented in his district court application for a writ of habeas corpus.[2] Except where necessary to prevent a manifest miscarriage of justice, no such showing being made here, an appellant may not urge as a ground for reversal a theory which he did not present in the trial court. See Thomason v. Klinger, 9 Cir., 349 F.2d 940, decided August 6, 1965; Daugharty v. Gladden, 9 Cir., 257 F.2d 750, 758. Accordingly we do not reach these additional arguments on this appeal. In the remanded proceedings, however, Chester may amend his application to assert additional grounds for relief concerning which he has exhausted his state remedies.

Reversed and remanded for further proceedings consistent with this opinion.

BROWNING, Circuit Judge (concurring in part, dissenting in part):

I agree with the opinion of the Court so far as it remands the case for consideration of appellant's allegations that he was denied the right to counsel at arraignment and that his plea was improperly induced. I would expand the hearing on remand to include the issues raised by appellant's allegation that the state denied him counsel at preliminary examination.

The relevant facts, conceded or alleged, are these. Appellant was born October 21, 1928. He left school in the eighth grade. In December 1945, when he was seventeen years of age, he was committed to a state institution on a charge of statutory rape. In August 1946 he was transferred to San Quentin Prison. Four months later, on December 11, 1946, prison officials removed him from a line of prisoners awaiting lunch, searched him, and found a knife in his coat pocket. Six months later, on June 16, 1947, appellant was brought before a Justice

---

1. Under California Penal Code, § 859, as it existed in 1947, an accused was entitled to be represented by counsel at his preliminary examination, and to be advised of that right. Had there been any allegation that these rights were withheld from Chester because of his poverty, we might have an equal protection question such as was presented in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. But there is no such allegation. Nor is there anything in the record to indicate that Chester was, because of poverty, dealt with differently than defendants who were able to employ counsel.

2. In so concluding, we are mindful of the rule that the petitioner's documents are to be read with a reasonable measure of tolerance where, as here, his district court appearance was pro se. See Wright v. Dickson, 9 Cir., 336 F.2d 878, 881; Pike v. Dickson, 323 F.2d 856, 857. Some of the additional issues Chester seeks to raise might be surmised from facts unearthed by a meticulous reading of certain state habeas corpus documents, copies of which were filed as exhibits to the petition purportedly in support of issues there raised. We do not believe that the district court is to be blamed for failure to discover issues presented in this manner.

Court for preliminary examination on a complaint charging a violation of section 4502 of the Penal Code of California, which prohibits a prisoner from possessing, or having custody and control of, a sharp instrument or other potential weapon. He was then eighteen. His only prior court appearance was in juvenile court. He was not familiar with court procedure and he was ignorant of his rights. He was not represented by counsel and was not advised of his right to counsel.

The state called two witnesses at the preliminary examination. A prison official testified that appellant was an inmate of San Quentin on the date of the alleged offense. A correctional officer testified that he removed appellant from the "noon line," searched him, and found a knife in the pocket of his coat. A knife alleged to be the one found was received in evidence without objection. Appellant attempted to cross-examine the officer regarding the particular pocket in which the knife was found. He called no witnesses, and did not testify on his own behalf. The court concluded that there was sufficient cause to believe that appellant had violated section 4502, and ordered him held to answer.

On June 21, 1947, five days after the preliminary examination, appellant was arraigned in Superior Court. He was not represented by counsel. He pleaded guilty, and was immediately sentenced to imprisonment for from five years to life. He was later charged with the offense of assault by a prisoner serving a life sentence, a violation of California Penal Code § 4500. He was convicted of this offense, and as a result will remain incarcerated for the balance of his natural life.

Describing the episode in the prison line, appellant states, "We were all standing in the long line, and when the older inmates realized that there was a shakedown someone put the knife in my pocket and warned me not to squeal or he would 'get me.' He said, 'They'll go easy on you kid.' Before I had a chance to protest or say anything, the guard had taken me out of line and had me take off my coat, and immediately found the knife." Appellant asserts that he was too frightened to tell the truth, but instead told the judge who sentenced him a story suggested by the older prisoners, that is, that he had the knife for protection against homosexual attacks. He states that the advice which he took in the absence of counsel was wrong and that he should have told the truth; that he tried to question the officer at the preliminary hearing to show that the knife was in his outside coat pocket and that he was not attempting to hide it, but his efforts at cross-examination were ineffectual.

In proceedings before a referee appointed by the Supreme Court of California (see In re Chester, 338 P.2d 431 (1959)), appellant was asked when he decided to plead guilty. He answered, "After I tried to fight the case myself at the preliminary hearing. I saw I wasn't doing too good, so I pled guilty, at the other court." He was later asked, "Why did you feel that your representation of yourself at the preliminary hearing was insufficient?" and answered, "Because I didn't do very good."

I

Under the rule of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964), the Sixth Amendment right to "the Assistance of Counsel" applies where (1) the accusatory stage in a criminal proceeding has been reached, and (2) a confrontation with the state occurs in which the aid of an attorney is necessary for the effective protection of the accused's interests.

(1) In California, when the preliminary examination begins, the accusatory stage in a criminal proceeding has been reached.

California Penal Code § 738 provides "Before an information is filed there must be a preliminary examination of the case against the defendant and an order holding him to answer," and "The proceeding for a preliminary examination must be commenced by written complaint" charging the defendant with a

criminal offense. The criminal process thus initiated continues in a series of defined steps until the accused is discharged or until he is convicted or acquitted. Calif. Penal Code, Part 2.

(2) The nature of a California preliminary examination is such that the aid of counsel is necessary for the protection of the interests of the accused.

The preliminary examination is commenced, as noted, by a written complaint charging a public offense. On request, the accused is entitled to have the public excluded. The magistrate reads the depositions of any witnesses examined. The state then presents its evidence. Witnesses for the state must be examined in the presence of the defendant, and may be cross-examined on his behalf. The magistrate may exclude and separate witnesses who have not testified. On demand, the accused is entitled to the name of any informer who is a material witness on the issue of guilt. Exhibits may be received in evidence, and if the accused is held to answer they are transmitted to the superior court for use at trial. The same rules of evidence as apply at trial, including the hearsay rule, apply at the preliminary hearing, and the commitment must be based on competent evidence. However, incompetent evidence, if not objected to, may be given full probative effect. The accused may move for dismissal at the conclusion of the prosecution's case. If the motion is denied, witnesses for the defense may be called and examined. If at the conclusion of all the evidence the state has failed to show there is sufficient cause to believe that an offense has been committed and that the accused committed it, he must be discharged. If the accused is held to answer, the magistrate must determine whether the offense is bailable, and, if so, must fix the bail. The district attorney is required to file an information against the accused within fifteen days of the magistrate's order. See Witkin, California Criminal Procedure 127–48 (1965); California Criminal Law Practice 223–50 (1964).

The California preliminary examination is essentially a judicial inquiry. It is an adversary proceeding in which the state is represented by the prosecuting attorney. It seems obvious that the accused could not represent himself adequately in such a contest; the skills of a lawyer are required.

The California Constitution recognizes the need for the assistance of counsel at preliminary examination. Article 1, section 8 provides that when a defendant is taken before a magistrate and charged with a felony "the magistrate shall immediately deliver to him a copy of the complaint, inform him of his right to the aid of counsel, ask him if he desires the aid of counsel, and allow him a reasonable time to send for counsel; and the magistrate must, upon the request of the defendant, require a peace officer to take a message to any counsel whom the defendant may name * * *."

The California legislature has enacted statutes to effectuate these constitutional provisions (Calif. Penal Code §§ 859–60), and, also in 1957, to make it explicit that if at preliminary hearing "the defendant desires and is unable to employ counsel, the court must assign counsel to defend him." Penal Code § 859, as amended, Calif.Stats.1957, ch. 209, § 1, p. 871.

The California Supreme Court has long recognized the fundamental importance of the assistance of counsel at the preliminary examination. In an opinion written in 1895, the court stated that the refusal of a magistrate to postpone a preliminary examination to permit the accused to obtain counsel was "a plain and palpable violation of a fundamental right of the defendant * * *." "Whatever the rule may have been at common law," the court said, "under our law every person accused of a felony is entitled to the aid of counsel, whether imprisoned or admitted to bail; and a refusal of an opportunity to procure such counsel amounts to the deprivation of an important right, essential to his safety." People v. Napthaly, 105 Cal. 641, 39 P. 29, 30 (Calif.Sup.Ct.1895). Recently

the California Supreme Court issued a writ of prohibition to restrain further prosecution of a complaint unless the accused was afforded counsel at preliminary examination. The court said, "The right to counsel is, of course, a basic one." Bogart v. Superior Court, 60 Cal. 2d 436, 34 Cal.Rptr. 850, 386 P.2d 474 (Calif.Sup.Ct.1963). See also People v. Terry, 57 Cal.2d 538, 21 Cal.Rptr. 185, 370 P.2d 985, 993, (Calif.Sup.Ct.1962) ("Respondent agrees that a defendant's right to counsel in the pretrial stages is valuable and substantial"); Ex Parte James, 38 Cal.2d 302, 240 P.2d 596, 600–03 (Calif.Sup.Ct.1952); Williams v. Superior Court, 226 Cal.App.2d 666, 38 Cal. Rptr. 291, 295–96 (D.C.A.1964).

The view that an accused needs the aid of counsel at preliminary examination is widely shared. It is reflected in statutory provisions of many other states which recognize an absolute right to counsel during preliminary examination.[1] It represents the judgment of a major part of the judges, prosecutors, and defenders consulted in a recent nationwide survey by the American Bar Foundation. The report of the Foundation states:

> "Each of the interviews with judges, prosecutors, and defenders included a question asking when in their opinion counsel should first be provided under an ideal system. The most significant thing about the responses to this question was the widespread support, among both judges and prosecutors, of early appointment of counsel, i. e., at or before the preliminary hearing. In 36

states half or more of the judges favored early appointment, and in 33 the majority of prosecutors did also. * * *

* * * * * *

As a second part of the question of when counsel should first be provided under an ideal system of justice, each judge, prosecutor, and defender was asked whether he thought it would be unfair if counsel were not provided at the stage he had chosen. * * * The great majority of those who designated an early stage also said it would be unfair if counsel were not provided then. Others gave qualified answers, such as 'not necessarily,' 'depends on circumstances,' and 'in capital cases but not others.' However, from the point of view of the due process clause, as interpreted in White v. Maryland [373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193] such answers can be bracketed with the 'yes' answers, since possible prejudice rather than actual prejudice is all that need be shown.

* * * * * * *

In the various responses there is a surprising degree of consensus among the three branches of the legal profession most directly concerned with defense of the poor— judges, prosecutors, and defense lawyers. The consensus is that a fair system of representation requires appointment of a lawyer for the poor man at a very early stage of the proceedings against him."[2]

1. In this Circuit see, for example, Alaska Rule Crim.Proc. 5; Arizona Rule Crim. Proc. 16, 17 A.R.S.; California Penal Code § 858; Idaho Code § 19–801; Revised Code Montana § 94–6101; Nevada Revised Stats. § 171.370; Oregon Revised Stats. § 133.610. See also, Illinois Code Crim.Proc. 109–1(b) Ill.Rev.Stat.1965, c. 38 § 109–1(b); Michigan Stat.Ann. § 28.-930, Comp.Laws 1948, § 766.12; New Jersey Rule Crim. Practice for Superior and County Courts 3:2–3; New Mexico Stat.Ann. Art. 41–3–1; New York Code Crim.Proc. §§ 188, 699; Pennsylvania

Rule Crim.Proc. 119; Texas Code Crim. Proc. Art. 16.01; Virginia Code Ann. § 19.1–241.2; Wisconsin Revised Stats. § 954.08.

2. Silverstein, Defense of the Poor, National Report, American Bar Foundation 83–85 (1965).
   A survey conducted in Virginia, prior to the 1964 enactment of a statutory guarantee of counsel at preliminary hearing in felony cases, disclosed that "almost half of the judges and over half of the Commonwealth's attorneys believed

The Foundation concluded that "counsel should be present at preliminary hearing," and summarized its reasons as follows:

"* * * the defendant without counsel at that stage is at a tactical disadvantage, as pointed out in several of the state reports. First, he does not know whether to ask for the hearing or to waive it. If the hearing is held, he does not know how to cross-examine the state's witnesses, or whether to testify himself. He does not know whether to ask that a record be made of the hearing. He does not know the requisite legal elements of the offense with which he is charged, or of lesser related offenses, so he is unable to discuss intelligently with the prosecutor possible reduction or dismissal of the charges. Moreover, it is possible, especially if the committing magistrate is untrained in the law, that the defendant will be bound over for the grand jury on insufficient evidence or that political considerations will affect his decision. * * * Further, according to field reports from most sample counties, defendants who are without counsel are indeed more likely to waive a preliminary hearing than defendants with retained counsel. * * * Taken together, these considerations suggest the conclusion that an indigent defendant needs a lawyer at or before the preliminary hearing to take full advantage of his rights." [3]

Commentators generally share the view that assistance of counsel is needed at least as early as the preliminary hearing to protect the substantial rights of the accused. See, for example, Beaney, The Right to Counsel in American Courts 210–12 (1955); Orfield, Criminal Procedure from Arrest to Appeal 59, 79–80 (1947); Slovenko, 33 Tulane L.Rev. 363, 370–71 (1959); Allison, 42 J.Am.Jud. Soc'y 113 (1958); Note, 73 Yale L.J. 1000, 1051 (1964); Segal, 51 A.B.A.J. 1165 (1965). In the latter article, Mr. Segal writes, "In certain types of cases the preliminary hearing before the committing magistrate is very nearly the most important stage of the case." 51 A.B.A.J. 1165 (Dec. 1965).[4] Commenting upon *Escobedo*, Mr. Segal continued, "If a constitutional right to counsel is to be recognized at the stage at which the case is still under investigation, it is difficult to escape the conclusion that there is an absolute right to counsel at the point where the prosecution is officially instituted in a court before a magistrate." Id. at 1166.

For the reasons suggested, appellant's preliminary examination was part of the accusatory process, the nature of the proceeding was such that assistance of counsel was necessary to protect appellant's interests, and appellant therefore

---

that counsel should be appointed at or before the preliminary hearing." Manson, 51 Va.L.Rev. 163, 165 (1965).

Following a survey of criminal defenders in New York, it was reported that "all but one of our consultants with extensive criminal practice repeatedly stressed the crucial importance to the defense of the preliminary hearing. The people's case appears on this examination. Its weaknesses can then be probed and exploited before the trial. The witnesses are more likely to tell the truth at the hearing than at the trial, because the events are fresher in their memories; hence their later wishful recollections, coached or spontaneous, can more easily be exposed at the trial for what they are." Willcox & Bloustein, 59 Colum.L. Rev. 551, 559 (1959).

3. Silverstein, *supra*, at 76.

4. Among the cases to which Mr. Segal refers are those involving a possible challenge to the legality of a search, as this one did (*infra*). In such cases there is "an imperative need to pinpoint, at the earliest possible time, the testimony of witnesses who establish the probable cause for the search and seizure."

And in any type of case, Mr. Segal concludes, "the preliminary hearing may be a critical stage in the proceedings simply because it may be the - last opportunity for the accused to obtain some discovery of the prosecution's case against him." 52 A.B.A.J. at 1166.

had a right to counsel under the Sixth Amendment.

## II

Assuming that appellant was denied this right, as he alleges, it does not necessarily follow that his subsequent conviction was invalid. Just as an unconstitutional search and seizure or the coercion of a confession would not require reversal or vacation of a conviction if the evidence admitted at trial was not tainted by the unconstitutional conduct, so also a denial of the right to counsel in pre-trial proceedings would not require that appellant's conviction be set aside if appellant was not prejudiced. See Anderson v. United States, 352 F.2d 945 (D.C. Cir. 1965). The rule was also applied in Blue v. United States, 342 F.2d 894, 901 (D.C.Cir. 1964), and Shelton v. United States, 343 F.2d 347 (D.C.Cir. 1964), although in these cases the accused was entitled to counsel in pre-trial proceedings by force of statute, and the constitutional issue was not discussed.[5]

In each of the cited cases the defendant pleaded not guilty and was convicted after a trial in which he had the aid of counsel. None of the evidence offered against the accused at trial was traceable to the pre-trial proceeding. There was no suggestion that trial counsel was not available in ample time in advance of trial to bargain with the prosecution for a possible reduction of the charge or to prepare for the trial itself; or that trial counsel was surprised by the government's evidence or handicapped in any other way by not having participated in the preliminary examination. And since in each case the evidence was sufficient to convict, counsel could scarcely have induced a magistrate to release the accused. Thus the court was able to say, in each case, from the record itself, that denial of counsel in the preliminary examination proceeding had not contributed to the detention of the accused or to his ultimate conviction; and that reversal for denial of appellant's right would be a futile act.

Of course the accused need not prove that he was actually prejudiced, or that the prejudice was substantial. If it appears that some degree of prejudice may have resulted, the court will inquire no further; for whether the potential prejudice was realized in fact, and if so in what degree, could be only a matter of speculation. It is therefore the rule that unless the possibility of prejudice is excluded by the record, the conviction cannot stand. Hamilton v. State of Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L. Ed.2d 114 (1961); White v. State of Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); cf. Dancy v. United States, (D.C.Cir. 1965).

## III

Some cases have adopted a different analysis, suggesting that the existence of the Sixth Amendment right to counsel (as distinguished from the availability of a particular remedy for its denial) is conditioned upon a showing of possible specific prejudice from the absence of counsel at a pre-trial confrontation. United States ex rel. Machado v. Wilkins, 351 F.2d 892 (2d Cir. 1965), and earlier Second Circuit cases therein cited; Wilson v. Harris, 351 F.2d 840 (9th Cir. 1965); Vess v. Peyton, 352 F.2d 325 (4th Cir. 1965), and earlier Fourth Circuit cases therein cited; and Lathram v. Crouse, 320 F.2d 120 (10th Cir. 1963); but cf. Gantar v. Cox, 351 F.2d 65 (10th Cir. 1965).

This approach has substantial deficiencies. As an examination of the cited

5. As Judge Burger points out in Williams v. United States, 345 F.2d 733, 735 n. 2 (D.C. Cir. 1965), the language in Johnson v. Zerbst, 304 U.S. 458, 467–468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), which speaks of compliance with the Sixth Amendment as prerequisite to the jurisdiction of the trial court, reflects "the old idea that lack of jurisdiction in the committing court was a necessary predicate for habeas corpus relief." It should not now be construed to require the vacation of a conviction for violation of an expanded right to counsel which the record affirmatively discloses could not have prejudiced the accused.

cases will demonstrate, it tends to limit the accused to protection from specific prejudice, rather than extending to him the affirmative benefits which may flow from the assistance of counsel. As applied, it conditions the right to counsel upon the demonstration of prejudice in fact—the right is denied where prejudice is "unlikely," "conjectural," "speculative," or "theoretical." It places upon the accused the heavy burden of proving, retrospectively, that specific prejudice may have occurred. It deprives the accused of any possibility of remedy in advance of the preliminary examination. It delays determination of whether there is a right to counsel until some time during the course of the preliminary examination when a prejudicial act or omission occurs, or, even later, when the question of possible prejudice is raised. If it is then determined that prejudice may have occurred, the time and effort invested in the prior proceedings will be wasted. A natural tendency develops to avoid finding prejudice except in the most extreme cases; and this tendency leads, as a practical matter, to a diminution of the constitutional right.

These difficulties are avoided (1) if the right to counsel is recognized as absolute in all accusatory stage confrontations in which legal skills are required for effective protection of the interests of the accused; and (2) if only the post-conviction remedy, and not the right, is made to depend upon the possibility of prejudice. The state then knows in advance, with reasonable certainty, when an accused is entitled to counsel. *Escobedo* provides the state with reasonably clear guidelines for determining when the accusatory stage is reached, and prosecuting attorneys can judge without substantial difficulty whether the nature of an impending confrontation is such that the accused will need the aid of counsel. Because the right to counsel would then be clear, the accused would be given the full benefit of counsel at the outset of the confrontation, when counsel is needed; and in the vast majority of cases unprofitable retrospective search for the possibility of prejudice would be avoided. In those few cases in which the right is denied, the burden would rest upon the state to demonstrate from the record that no prejudice resulted, but a conviction would not be vacated or reversed where this could be shown.

IV

As the record now stands, the state has failed to establish that appellant was not prejudiced by denial of counsel at his preliminary examination.

It cannot be said with assurance that if the facts which appellant now asserts had been properly developed and adequately presented at appellant's preliminary examination, the magistrate would have found probable cause for holding appellant. California preliminary examinations are not merely pro forma; in 1965 a quarter of the complaints filed with magistrates were dismissed.[6]

The record suggests at least three possible defenses available to appellant. (1) Although the purpose with which the weapon was carried is not an element of the offense under California Penal Code § 4502 (People v. Marcus, 133 Cal.App. 2d 579, 284 P.2d 848, 849 (1955)), the intention to do the act prohibited by the statute undoubtedly is. Accepting appellant's version of the facts, the question

6. Twenty-six per cent of the complaints filed in 1964 (12,429 of 47,183) were dismissed. Crime in California, California Dept. of Justice, Division of Criminal Law, 1964 Annual Report at 102. Comparable figures for 1963 were 25% (11,-104 of 44,833); for 1962, 23% (10,196 of 43,851); for 1961, 22% (9,382 of 41,-820); for 1960, 20% (8,433 of 42,827) (Ibid at 72).

The California experience is not unusual. Orfield cites surveys showing that in metropolitan areas up to 58% of preliminary hearings result in discharge of the accused. Orfield, Criminal Procedure from Arrest to Appeal 96–98 (1947). See also Fellman, The Defendant's Rights 20 (1958): "As a matter of fact, as all crime surveys show, a tremendous number of cases are terminated at this point * * *."

presented would be whether one in whose pocket a knife was thrust, where it rested for only a few moments until removed by still another, could be said to have had the intention to possess the weapon or have it under his custody and control, within the meaning of section 4502 of the California Penal Code. It is at least arguable that such a person does not have the requisite intention, any more than does a person who has no knowledge of the weapon's presence. See People v. Pope, 168 Cal.App.2d 666, 668, 336 P.2d 236 (D.C.A. 1959); People v. Patterson, 102 Cal.App.2d 675, 228 P.2d 51 (D.C.A. 1951); People v. Jennings, 121 Cal.App. 2d 120, 262 P.2d 611 (D.C.A. 1953). (2) Appellant may have had a defense under section 26 of the California Penal Code, which frees from criminal liability persons "who committed the act * * * charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused." (3) The evidence against appellant may have been illegally obtained. If so, it would not have supported a finding of probable cause. Priestle v. Superior Court, 50 Cal. 2d 812, 330 P.2d 39, 41 (Calif.Sup.Ct. 1958). And even if a challenge to the legality of the search and seizure were unsuccessful, it might have been of value to the defense for, as Mr. Segal points out (51 A.B.A.J. 1165), the government's showing of probable cause may reveal information which the government would not otherwise disclose—including the identity of witnesses, a fact which might have been of importance to appellant, for he was unable to identify the particular convict who put the knife in his pocket.

Even if it is assumed that the magistrate would have held appellant to answer, the possibility cannot be excluded that lack of counsel at his preliminary hearing prejudiced appellant in subsequent proceedings culminating in his plea of guilty. In these subsequent proceedings, too, he was without assistance of counsel. The absence of a counsel-aided opportunity to explore the possibility of a lesser charge and to develop his defenses at his preliminary examination may therefore have been critical. In view of the possible defenses available to him, his plea of guilty to the section 4502 charge may well have been improvident, resulting solely from the lack of counsel's earlier advice and assistance. Moreover, appellant testified to a direct relationship between his lack of counsel at preliminary examination and his subsequent plea of guilty—for, as noted, he testified that his inability to represent himself properly at the preliminary examination induced his plea of guilty.