[Civ. No. 350.    Fifth Dist.    April 27, 1964.]

JACK MITCHELL WILLIAMS, Petitioner, v. THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Marshall W. Krause, J. E. Hahesy, Kronick, Moskovitz & Vanderlaan and Lawrence L. Angelo for Petitioner.

No appearance for Respondent.

Stanley Mosk, Attorney General, and Doris H. Maier, Assistant Attorney General, for Real Party in Interest.

CONLEY, P. J.—The petition of Jack Mitchell Williams is in form one for a writ of prohibition or other appropriate writ. For the reasons set forth in this opinion, the proceeding will result in the issuance of a writ of mandamus. ■ If a writ of prohibition is uncalled for but the facts warrant positive relief, a writ of mandate may issue (*Proctor & Gamble Mfg. Co.* v. *Superior Court*, 124 Cal.App.2d 157 [268 P.2d 199]); a writ of mandate has been heretofore granted when petitioner was denied his constitutional right to counsel (*Vasquez* v. *District Court of Appeal*, 59 Cal.2d 585 [30 Cal.Rptr. 467, 381 P.2d 203]).

The Attorney General, representing the real party in interest, concedes that an attorney should be appointed for the petitioner on the charges brought against him.

The prayer of the petition as amended during the oral argument of the case is, in the words of counsel for petitioner, ''. . . that the case be remanded to the superior court with instructions to instruct the municipal court to set aside the preliminary hearing and appoint counsel.''

The facts are as follows:

1. At 3:30 p.m. on November 19, 1963, petitioner Jack Mitchell Williams was arrested by agents of the California Bureau of Narcotic Enforcement, the Stanislaus County sheriff's office and the Modesto Police Department on a charge of violating sections 11530 and 11531 of the California Health and Safety Code.

2. On November 20, 1960, a criminal complaint was issued charging petitioner with the violation of the above code sections.

3. On November 21, 1963, petitioner appeared in the Modesto Municipal Court before Judge Clarence M. Hanson; the court informed petitioner of the charges, of his right to subpoena witnesses, of his right to the services of counsel at all stages of the proceeding and of the court's willingness to allow him time to obtain counsel or to have an attorney appointed by the court to represent him if petitioner was without funds; petitioner informed the court that he intended to obtain counsel; a continuance was granted at his request until November 27, 1963.

4. Petitioner appeared in the municipal court on November 22, 1963, before Judge Frank S. Pierson and moved for a reduction of bail which had been set at $5,500; the motion was denied; petitioner told the court that a third party was attempting to raise the money for his bail and that up to that time he had been unable to obtain counsel; the court con-

tinued the case at his request until November 27, 1963, to give him an opportunity to obtain counsel.

5. On November 27, 1963, a bail bond was posted; the premium required by the bail bond broker was $550; of that sum petitioner contributed $141, which he said represented all of his available assets; the balance of the premium was contributed by friends and relatives; petitioner's parents, Mr. and Mrs. R. E. Williams, were required by the broker to execute a blank deed of trust as security for the bond.

6. On the same day, petitioner appeared before Municipal Judge Clarence M. Hanson; he told the court of his release on bail and requested a continuance to permit him to obtain counsel; his request was accordingly granted and the matter was continued to December 6, 1963.

7. Petitioner appeared before Municipal Judge Clarence M. Hanson on December 6, 1963; he told the court that he had discussed the case with an attorney, but had not retained his services; petitioner's request for a continuance until December 18, 1963, to permit him to attempt to secure private counsel was granted.

8. On December 18, 1963, the defendant appeared before Municipal Judge Clarence M. Hanson and informed the court that he had lost all funds with which he had hoped to obtain counsel; he told the court he had been unable to retain two different attorneys, because of their respective requirements of cash retainers of $1,500 and $750; petitioner specifically requested the services of the public defender, but the judge denied the request, because the fact that he was out on bond showed financial ability to retain private counsel, and continued the matter until December 20, 1963, for further proceedings, at defendant's request.

9. Petitioner appeared before Municipal Judge Clarence M. Hanson on December 20, 1963; he informed the court that he was indigent and unable to secure the services of counsel; the court refused to appoint an attorney; petitioner was arraigned and a preliminary examination date set for January 6, 1964, at 1:30 p.m.

10. On that date, petitioner appeared before Municipal Judge Carson N. Taylor; the court made no effort to provide defendant with counsel; after hearing the testimony of witnesses produced by the People in the preliminary examination, the court ordered petitioner bound over for trial in the superior court and indicated that the time for arraignment there would be January 15, 1964.

11. On January 8, 1964, an information filed in the Superior Court of Stanislaus County charged petitioner with the commission of the two felonies, violation of sections 11530 and 11531 of the California Health and Safety Code.

12. Petitioner appeared for arraignment in the superior court before Judge David F. Bush on January 15, 1964; he told the court that he was without funds and unable to obtain counsel and requested the court to appoint the public defender to represent him; the court denied the request on the ground that defendant had been able to post a $5,500 bond for his release, and that he was therefore not an indigent; the case was continued until January 22, 1964, to permit petitioner to retain counsel.

13. On January 15, 1964, petitioner wrote a letter to Marshall W. Krause, attorney for the American Civil Liberties Union at San Francisco, setting out the facts that he was indigent, that he had requested that the public defender be appointed to represent him, and that the request had been denied because bail had been posted.

14. On January 16, 1964, Attorney Krause wrote to Judge Bush and requested that the public defender be appointed to defend petitioner.

15. On January 22, 1964, petitioner, appearing before Judge Bush, repeated the statement that he was without funds and unable to obtain an attorney and requested that the court appoint the public defender to represent him; the court refused and continued the matter until January 29, 1964.

16. On the same day, Judge Bush answered the letter from Mr. Krause stating that it was *the policy of respondent court not to appoint the public defender when the defendant had been released on bail bond secured by either the defendant or someone in his behalf*.

17. On January 24, 1964, Attorney Krause wrote again to Judge Bush asking that the court appoint the public defender to represent petitioner; Attorney Krause's letter referred to the case of *Gideon* v. *Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733].

18. On January 29, 1964, petitioner appeared before Judge Bush and once again requested that the public defender be appointed; the court denied the application and set March 2, 1964, as the date of trial; the court furnished petitioner with an affidavit form relative to his financial condition and requested that he complete it in open court; defendant com-

plied and the affidavit was stamped and filed as of the next day.

19. Petitioner alleges in his petition that at all times since his arrest he has attempted to obtain counsel but has been unable to do so because he has insufficient funds; he states that from December 18, 1963, he has requested appointment of an attorney and the courts have consistently refused; that the respondent court is threatening to try petitioner on the above charges; that petitioner is without funds to employ a lawyer; that he is unemployed but is receiving $55 a week in California Unemployment Compensation payments; that petitioner has no other assets and the $55 a week is required for the support and maintenance of petitioner and his son; that he is unable to obtain employment because of the prosecution of the case and that the County of Stanislaus maintains a public defender system.

█ There is no question but that a felony defendant who is too poor to employ counsel is entitled to the services of a public defender or, if there is no public defender, of some other court-appointed attorney (see Pen. Code, §§ 686, 859, 860, 866.5 and *Bogart* v. *Superior Court*, 60 Cal.2d 436, 438 [34 Cal.Rptr. 850, 386 P.2d 474]). █ In a felony case, a defendant who is an indigent is entitled to the appointment of an attorney at the preliminary examination and also in the superior court (*Bogart* v. *Superior Court, supra*).

Petitioner relies on *Gideon* v. *Wainwright, supra*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733], to support his argument that he has been denied his fundamental right to counsel guaranteed by the Fourteenth Amendment of the United States Constitution. In the *Gideon* case, the petitioner was charged in a Florida state court with the commission of a felony; he appeared in court without funds and without a lawyer and asked the court to appoint counsel for him; the request was denied and the petitioner conducted his own defense; the jury returned a verdict of guilty and petitioner was sentenced to five years in the state prison; petitioner filed a habeas corpus petition in the Florida Supreme Court which was denied; the United States Supreme Court granted certiorari; that court in an opinion by Mr. Justice Black, held that the right of an indigent defendant in a felony trial to have the assistance of counsel is "a fundamental right, essential to a fair trial." (See also *Douglas* v. *State of California*, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811].)

■ Various phrases are used to describe the persons entitled to the appointment of attorneys at the expense of the state. Sometimes they are described as "persons who are unable to employ counsel," or as "indigents," but the simple characterization made by Mr. Justice Black in the *Gideon* case is understandable and particularly apropos—persons "*too poor to hire a lawyer.*" ■ Obviously, this situation is one which should be handled by the judges who have charge of the courts where preliminary examinations and trials are held. Trial judges are in the best possible position administratively to decide the question involved, because the facts involved in each case must determine the answer. ■ If an individual cannot afford the retention of a private attorney, he is constitutionally entitled to the appointment of counsel.

■ Originally, it is the duty of a person who deems himself too poor to hire a lawyer to request that counsel be appointed for him after the court has informed him of his right to the aid of counsel and has asked him if he desires an attorney (Pen. Code, § 859), and in this connection he should make a preliminary showing that he is not able to secure the services of a lawyer. Of course, he cannot hide his assets and demand the help of a public defender at the public expense. The question whether or not he is in a position to hire an attorney is frequently a complex one. The problem is thus discussed in 13 Stanford Law Review, page 522, at page 545 in an article entitled *Representation of Indigents in California*: "The question of who is entitled to the services of assigned counsel or the public defender arises at the arraignments before the committing magistrate and the trial court. The answer—'persons who are unable to employ counsel'—is a vague one, and seldom defined by the courts. The standard applied is flexible, and contemplates consideration of such factors as amount of income, bank accounts, ownership of a home or car, outstanding debts, the number of dependents, and the seriousness of the charge.

"The fact that an accused on bail has been able to continue employment following his arrest is not determinative of his ability to employ counsel, since few attorneys will accept a case on a credit basis, and generally a substantial cash payment is required. However, the fact that an accused is able to afford bail may raise an inference that he is capable of retaining counsel. A few courts have been especially reluctant to give an accused on bail free legal services; thus, prior to appointing counsel, they have raised the amount of bail to insure his confinement. The financial circumstances of relatives

or persons owing the accused a duty of support may not be considered in determining his rights to appointment. In metropolitan defender counties, judges appear more lenient in their interpretations of indigency standards than do judges in small public defender or assigned counsel counties, but in essence the test applied is whether or not a private attorney would be interested in representing the defendant in his present economic circumstances. Attempts to specify definite standards and limits have met with opposition from members of the bar and disapproval from the state legislature."

■ In the instant case both the municipal court and the superior court based their refusals to appoint an attorney for the defendant on the ground that he had been released on bail and therefore was not an indigent. The bail had already been furnished before arraignment and the defendant had paid a total of $141 out of the premium of $550. The question presented to us, therefore, is whether it is proper for a court to refuse to appoint counsel for an indigent defendant on the sole ground that he has been released on bail. The answer is emphatically no. ■ The purpose of bail in criminal cases is to insure the personal attendance of the defendant during the court sessions at all times that his attendance may be lawfully required (*Sawyer* v. *Barbour*, 142 Cal.App.2d 827 [300 P.2d 187] ; Witkin, Cal. Criminal Procedure, § 148, p. 141) ; it is not pecuniary compensation to the state. (*General Casualty Co.* v. *Justice's Court*, 41 Cal. App.2d 784 [107 P.2d 663] ; *People* v. *Calvert*, 129 Cal.App. 2d 693 [277 P.2d 834].)

■ In this case, the bond premium to which petitioner contributed was paid to a bond broker; it is a matter of common knowledge that such brokers do not, generally speaking, repay premiums that have been collected by them; the facts that a premium has been paid and a bond issued are not financial assets of the defendant and cannot be considered as an element of wealth.

Petitioner points out that he has met the requirements of an indigency case, and that counsel should be appointed for him in response to his constitutional rights (*People* v. *Williams*, 124 Cal.App.2d 32 [268 P.2d 156] ; *Bogart* v. *Superior Court, supra*, 60 Cal.2d 436, 439 ; *People* v. *Hellum*, 205 Cal. App.2d 150 [22 Cal.Rptr. 724]). The court has not urged any other factor than that he is out on bail as a basis for the denial of counsel, and the Attorney General concedes that this

court should require the appointment of an attorney for Mr. Williams, saying in the "Points and Authorities in Support of Return to Order to Show Cause": "It would appear that this case could be remanded to the Superior Court with directions for the appointment of counsel. . . ."

As is observed in 3 Witkin, California Procedure, Appeal, section 150, page 2334: "An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case." (See also *Harmon* v. *Keough*, 41 Cal.App. 773, 775 [183 P. 201]; *Kashow* v. *Plant*, 97 Cal.App. 696 [276 P. 117]; *Morris* v. *Board of Education*, 119 Cal.App. 750, 753 [7 P.2d 364, 8 P.2d 502]; *Hospelhorn* v. *Newhoff*, 43 Cal. App.2d 678 [111 P.2d 688]; *Browne* v. *Superior Court*, 16 Cal.2d 593, 599 [107 P.2d 1, 131 A.L.R. 276]; *Estate of Stevens*, 27 Cal.2d 108, 115 [162 P.2d 918].)

Stanislaus County has a public defender. Section 27706 of the Government Code states his duties in part as follows: "The public defender shall perform the following duties: (a) Upon request of the defendant or upon order of the court, he shall defend, without expense to the defendant, any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior court at all stages of the proceedings, including the preliminary examination."

The Attorney General does not concede that petitioner is entitled to a discharge from all proceedings relating to the crimes with which he is charged, but argues that petitioner is held properly on the complaint, and that even if a motion under section 995 of the Penal Code should be made and the preliminary proceedings set aside, a dismissal of the action is not warranted nor is a discharge of the prisoner proper in view of the allegations relative to the crimes charged. (*People* v. *Williams, supra,* 124 Cal.App.2d 32; *Douglas* v. *State of California, supra,* 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 311]; *Bogart* v. *Superior Court, supra,* 60 Cal.2d 436.) The Attorney General urges that the case be remanded to the superior court with directions for the appointment of counsel and that the case then proceed as in any other criminal trial.

In the event that the present case should be dismissed, the bail bond which is now effective would terminate. One may assume that the District Attorney of Stanislaus County if a dismissal of the present action were ordered would again file

a charge covering the two counts set forth in the present information, which would be followed by a new arrest, a preliminary hearing, and a trial. The present bond would not apply to the new charge and the defendant would be placed under the necessity of either finding the means to furnish another bond in the second case, or he would be kept in jail until he was tried. Furthermore, a delay would ensue, and in view of the repeated statements of the defendant in the present petition that he desires an early trial, this would not be to his advantage, particularly if he were unable to furnish bail.

In view of the peculiar circumstances, and in the interest of the defendant, this court will make orders which should fully protect his right to a lawyer or in the alternative permit him in effect to waive the lack of an appointed attorney at the preliminary examination. The defendant, after the appointment of counsel, may determine not to urge the provisions of section 995 of the Penal Code hereinafter referred to and in such event he will be deemed to have waived the right to an attorney at the preliminary examination; the applicable provision of our order is made for the benefit of the defendant so that he may remain out on the present bail bond, which has been approved by the court, and have an earlier trial for the offenses specified in the information than if identical charges were brought against him in a new complaint.

It is accordingly ordered: (1) that a peremptory writ of mandate issue directing the Superior Court of Stanislaus County to appoint the public defender to represent the defendant; (2) that the court shall promptly thereafter set aside the arraignment and plea of the defendant so that, if he be so advised, he may move to set aside the information pursuant to the provisions of section 995 of the Penal Code; and (3) that the court shall grant such motion, if it be made, on the ground that before the filing of the information the defendant was not legally committed by the magistrate in that he was denied a constitutional right to the appointment of counsel.

Stone, J., concurred.

Brown (R. M.), J., deeming himself disqualified, did not participate.