[Crim. No. 11227. Third Dist. Nov. 9, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DAVID LONGWITH, Defendant and Appellant.

COUNSEL

Howard W. Shook, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REGAN, J.**—Defendant appeals from a judgment entered after a jury found him guilty of violation of Penal Code section 261, subdivision 3, rape by threats. Probation was denied and defendant was sentenced to state prison for six years.

### FACTS

The victim was defendant's 16-year-old stepdaughter, L. According to L., and from statements made by the defendant to L.'s mother, defendant had engaged in sexual contact (fondling and oral copulation) with the victim since she was seven years old. The sexual contact progressed and sexual intercourse was initiated when L. was approximately 12 years old.

On December 31, 1979, when L. was 15 years old, she was confined to bed following oral surgery. She was taking medication which made her sleepy and lethargic, causing her difficulty in moving about. On that date L.'s mother left the family residence for work at approximately 8:30 a.m. Defendant remained at home that day. After Mrs. Longwith left for work defendant ordered L.'s brother, D., to leave the residence and when D. complied defendant locked the door. Defendant then awakened L. and walked her into the bathroom. Defendant told her that he "needed it more" and that he would hurt her and kill her female friend, J.P., if she did not cooperate with him. Defendant then undressed L. and began fondling her and kissing her. L. resisted defendant by "pushing away, hitting him, and telling him no." Defendant, however, continued his attack, penetrated L. sexually and ejaculated. Subsequently, L. reported the incident to her mother who called police.

Defendant was charged by information with violation of Penal Code section 261, subdivision 3. He was arraigned on the information on April 8, 1980, and pled not guilty. A public defender was appointed by

the Municipal Court of Manteca to represent defendant. Subsequently, on May 9, 1980, the superior court initiated an inquiry into the defendant's financial eligibility for representation by the public defender. On June 13, 1980, the court found that defendant was financially ineligible for representation by the public defender and relieved the public defender from further representation of the defendant.

On June 18, 1980, defendant appeared in propria persona. The court advised defendant to obtain private counsel and requested that he supply the court with a list of attorneys he had contacted. The action was continued until June 20, 1980, to enable defendant to retain counsel. On June 20, 1980, defendant appeared and informed the court he was unable to retain private counsel. The court continued the matter to allow defendant further time to obtain counsel.

On June 26, 1980, the San Joaquin County Public Defender's office filed a petition for a writ of mandate (3 Civ. 19759) challenging the court's order relieving the public defender.

On July 3, 1980, defendant appeared and informed the court that he had not retained private counsel and that he did not wish any further continuances. At that time the court questioned defendant as to his decision to conduct his own defense.

The matter proceeded to trial on July 22, 1980,[1] with the defendant acting in propria persona. Defendant was eventually convicted as charged.

On December 29, 1980, defendant filed a motion for a new trial which was denied on December 31, 1980, and sentence was imposed.

## DISCUSSION

On appeal defendant contends that (1) his decision to proceed in propria persona was not the result of a knowing and intelligent waiver of his right to counsel; (2) the dismissal of defendant's public defender was a denial of his right to counsel; (3) the trial court committed reversible error in allowing the defendant to waive his right against self-incrimination; and (4) the trial court erred in not granting a new

---

[1]On that date, 3 Civil 19759, the June 26, 1980, petition for a writ of mandate was denied.

trial or modifying the verdict. We disagree and shall affirm the judgment.

## I

■ Defendant contends he was denied his constitutional right to counsel on the theory that he did not make a knowing and intelligent waiver. ■ The United States Supreme Court in *Faretta* v. *California* (1975) 422 U.S. 806, 821 [45 L.Ed.2d 562, 574, 95 S.Ct. 2525], held that the Sixth Amendment of the Constitution "implies a right of self-representation" for a defendant in a criminal action. The court further stated: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." (*Id.,* at p. 835 [45 L.Ed.2d at p. 581].)

In addition, the court held that: "Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (*Id.,* at p. 835 [45 L.Ed.2d at pp. 581-582].)

The California Supreme Court, interpreting *Faretta,* has held that when a demand for self-representation is timely made, the trial court must permit a defendant to represent himself on ascertaining that he has voluntarily and intelligently elected to do so. (*People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187]; *People* v. *Solomos* (1978) 83 Cal.App.3d 945, 950 [148 Cal.Rptr. 248].) While the language quoted from *Faretta* is dicta, the import of the language is clear. "Courts must be certain that defendants who insist on going to trial without benefit of counsel have made that decision knowingly and intelligently." (*People* v. *Paradise* (1980) 108 Cal.App.3d 364, 368 [166 Cal.Rptr. 484].) Even though defendant's election for self-representation is against the advice of the court, the court must allow defendant to represent himself without regard to the apparent lack of wisdom of the election and even though the defendant may conduct his own defense to his own detriment. (*Faretta, supra,* 422 U.S. at pp. 834-835 [45 L.Ed.2d at pp. 581-582]; *Ferrel* v. *Superior Court* (1978) 20 Cal.3d 888, 891 [144 Cal.Rptr. 610, 576 P.2d 93].)

■ There has been some judicial unclearness as to the manner in which a court determines whether the waiver was knowing and intelligent. It *is* clear, however, that a defendant's technical legal knowledge is an irrelevant consideration to the trial judge's assessment of whether the defendant made a knowing and intelligent waiver of his right to counsel. (*Faretta, supra*, 422 U.S. at p. 836 [45 L.Ed.2d at p. 582]; *People v. Salas* (1978) 77 Cal.App.3d 600, 604 [143 Cal.Rptr. 755]; *People v. Elliot* (1977) 70 Cal.App.3d 984, 991 [139 Cal.Rptr. 205].)

Some case authority requires that the trial court give a specific, on the record, warning to the defendant prior to allowing the waiver. (*People v. Torres* (1979) 96 Cal.App.3d 14, 19-22 [157 Cal.Rptr. 560]; *People v. Fabricant* (1979) 91 Cal.App.3d 706, 712 [154 Cal.Rptr. 340].) The trend, however, is not to mandate the giving of some specific warning prior to allowing the defendant to waive his right to counsel. Instead, contemporary case authority seems to require that whenever a defendant insists on proceeding without counsel the trial court does whatever is necessary relative to the circumstances to determine that the defendant made a knowing and intelligent election. (*People v. Barlow* (1980) 103 Cal.App.3d 351, 365 [163 Cal.Rptr. 664]; *People v. Paradise, supra*, 108 Cal.App.3d at pp. 369, 371-372.) A valid waiver of the right to counsel is not determined by any ritualistic advisements as to the disadvantages of self-representation but is determined by reviewing the entire record and circumstances of the case. (*People v. Paradise, supra*; *People v. Barlow, supra*, 103 Cal.App.3d at pp. 367, 370; *Benge v. Superior Court* (1980) 110 Cal.App.3d 121, 130 [167 Cal.Rptr. 714].)

Further, it is clear the burden is on defendant to prove that he did not intelligently and knowingly waive his right to counsel. (*Moore v. Michigan* (1957) 355 U.S. 155, 161-162 [2 L.Ed.2d 167, 172, 78 S.Ct. 191]; *People v. Barlow, supra*, 103 Cal.App.3d at p. 373; *People v. Evans* (1980) 112 Cal.App.3d 607, 614 [169 Cal.Rptr. 240].)

■ The court in *People v. Lopez* (1977) 71 Cal.App.3d 568, 572-574 [138 Cal.Rptr. 36], in some detail, suggested three, nonexclusive, general categories that may be considered in a *Faretta* situation. They are: (1) the disadvantages of self-representation have been communicated to the defendant; (2) the defendant has sufficient intellectual capacity; and (3) the defendant is informed that he waives the right to appeal on the grounds of inadequacy of representation.

We have examined the record and are of the opinion the record adequately establishes the defendant made a knowing and intelligent waiver. The trial court warned defendant that self-representation would be disadvantageous. Specifically, the trial court warned defendant of the disadvantage of a contest between a skilled prosecutor and a layman and that the "deck" was "stacked against" him. Further, we observe in the record, prior to the acceptance of the waiver, a colloquy between the trial judge and defendant in which the court warned defendant of the risks and possible consequences of self-representation and instructed him on procedures of criminal trials. Defendant acknowledged the risks and persisted in his desire to represent himself.[2]

In addition to the trial judge commenting on the disadvantages of self-representation, the prosecutor specifically advised defendant to retain an attorney. The prosecutor stressed the difficult evidentiary problems and the potential for a prejudicially adverse impact on his defense caused by an emotional backlash by the jury if the defendant cross-examined the victim improperly.

When the defendant was interrogated at length by the court, he gave no indication that he lacked the intellectual capacity to waive the right to counsel. The court specifically remarked on the intellectual capacity of the defendant, finding that he was an intelligent individual.

The court did not inform defendant that he would waive the right to appeal on the ground of inadequacy of counsel. The *Lopez* categories, however, are only suggested and not exclusive. (*People* v. *Evans, supra,* 112 Cal.App.3d at pp. 612, 614; *People* v. *Barlow, supra,* 103 Cal. App.3d at p. 370.) There are other factors that bear on the issue of waiver. Defendant resisted repeated attempts of the trial court to have him agree to a continuance. Also, the court informed defendant that the penalty in case of conviction would be severe. In light of the entire record we are of the opinion that the waiver of counsel and the election to proceed in propria persona was "knowing and intelligent."

## II

Defendant contends dismissal of the public defender under Government Code section 27707 was improper and a denial of his con-

---

[2]Defendant had been partially advised on the subject of self-representation at earlier proceedings in the case.

stitutional right to counsel.[3] He argues that at the time the court made the determination he was not eligible for representation by the public defender, the court utilized outdated financial information, and that since defendant did not have the financial resources to retain private counsel he was denied the right to counsel.

Indigence is a qualification for representation by the public defender. (Pen. Code, § 859; Gov. Code, § 27706, subd. (a).) Accordingly, a nonindigent adult has no constitutional right to appointed counsel in a criminal case. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335, 344 [9 L.Ed.2d 799, 805, 83 S.Ct. 792, 93 A.L.R.2d 733]; *In re Ricky H.* (1970) 2 Cal.3d 513, 523 [86 Cal.Rptr. 76, 468 P.2d 204].)

Determination of whether a defendant is eligible for services of the public defender is within the authority and discretion of the trial court. "Obviously, this situation is one which should be handled by the judges who have charge of the courts where preliminary examinations and trials are held. Trial judges are in the best possible position administratively to decide the question involved, because the facts involved in each case must determine the answer." (*Williams* v. *Superior Court* (1964) 226 Cal.App.2d 666, 672 [38 Cal.Rptr. 291]; Gov. Code, § 27707.) This language is quoted with approval in *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 837 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391], and *People* v. *Lewis* (1971) 19 Cal.App.3d 1019, 1024 [97 Cal.Rptr. 419]. If the trial court conducts a hearing as to defendant's financial ability to retain private counsel and if there is any substantial evidence to support this finding, it will be affirmed. (*Still* v. *Justice Court* (1971) 19 Cal.App.3d 815, 819 [97 Cal.Rptr. 213]; *People* v. *Lewis, supra,* 19 Cal.App.3d at p. 1024.)

The definition of a person who is indigent, according to statute, is "any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior, municipal or justice courts at all stages of the proceedings, including the preliminary examination." (Gov. Code, § 27706, subd. (a).) The court in *Williams, supra,* 226 Cal.App.2d at page 672, referring to the description of an indigent, stated that "Sometimes they are described as 'persons who are unable to employ counsel,' or as 'indigents,' but the simple characterization made by Mr. Justice Black in the *Gid-*

---

[3]Under section 27707, the trial court makes the "final" determination of indigency and may order a financial statement from defendant for this purpose.

*eon* case is understandable and particularly apropos—persons 'too poor to hire a lawyer.'" The California overall test is whether a private attorney would agree to represent defendant in his then economic circumstances. (*In re Smiley* (1967) 66 Cal.2d 606, 620 [58 Cal.Rptr. 579, 427 P.2d 179]; *Still* v. *Justice Court, supra*, 19 Cal.App.3d at p. 818.) Determination of indigency by this test is to be made by obtaining as complete a financial picture as possible and in so doing, "fairness requires that consideration be given not only to the defendant's assets but also to such countervailing factors as the nature and extent of his outstanding debts, the encumbrances on his home or car, the number and age of his dependents, and any preferred charges such as child support or alimony." (*In re Smiley, supra*, 66 Cal.2d 606, 619-620.) In *Williams, supra*, 226 Cal.App.2d at page 672, the court stated the standard in determining indigency is a flexible one. It contemplated consideration of such factors as amount of income, bank accounts, ownership of a home or a car, outstanding debts, number of dependents, and the seriousness of the charge.

■ From the record we find there is substantial evidence that a private attorney would have been willing to represent defendant in his then economic circumstances. The court had referred to the latest financial disclosure made by defendant. Prior to trial defendant was employed full time from which his gross income from January 1980 to May 16, 1980, was $10,670.13 for an average, monthly, gross income of approximately $2,100. He was sole owner of a 1975 Ford. ■ Further, defendant had the financial capacity to post bond.[4] Defendant had a monthly preferred obligation of $185, of which $85 was child support and the remainder spousal support. In addition, defendant had no savings and had voluntarily incurred several debts relative to his new living arrangement as a single man. The crux of defendant's argument is that while the monthly gross income was approximately $2,100, his monthly obligations were such that in effect he had very little disposable income to retain private counsel.

Defendant's position is not unique. In fact, a great number of persons live beyond their means, but could not be considered indigent by the test to be here employed. The logical extension of the defendant's argument would allow a party who earns $100,000 per year but who spends

---

[4]We are aware that the mere ability of defendant to post bond is not determinative of his nonindigency for purposes of appointment of counsel, but it is a factor to consider. (*Williams, supra*, 226 Cal.App.2d at p. 673.)

$100,000 per year to be eligible for the services of the public defender. Such a proposition is not supported by any authority which we could find.

## III

██ Defendant contends he was deprived of his Fifth Amendment right against self-incrimination as there was not a knowing and intelligent waiver.

██ The privilege against self-incrimination is purely a personal privilege which the defendant may waive if he so desires. (*Rogers* v. *United States* (1950) 340 U.S. 367, 370 [95 L.Ed. 344, 347, 71 S.Ct. 438, 19 A.L.R.2d 378]; *People* v. *Barker* (1965) 232 Cal.App.2d 178, 181 [42 Cal.Rptr. 651].) Generally, when "*a defendant is represented by counsel, there is no duty on the part of the trial court to offer the accused any advice on his election to testify or not to testify or to explain the ramifications of either choice.*'" (*People* v. *Thomas* (1974) 43 Cal. App.3d 862, 867 [118 Cal.Rptr. 226], quoting *State* v. *McKenzie* (1973) 17 Md.App. 563 [303 A.2d 406, 417].) The privilege against self-incrimination may be waived and is waived if the defendant takes the stand to testify as a witness. (*People* v. *Solomos, supra*, 83 Cal. App.3d at p. 953.) However, the duty of the court is greater when a defendant is acting in propria persona. If a defendant appears in court without counsel it cannot be presumed he is aware of his Fifth Amendment right (*ibid.*), and if the accused is to testify it is the duty of the trial court to inform the defendant of his constitutional right not to do so. (*People* v. *Barker, supra*, 232 Cal.App.2d at p. 182.) This is so even if the defendant voluntarily takes the stand. (*People* v. *Glaser* (1965) 238 Cal.App.2d 819, 828-829 [48 Cal.Rptr. 427].) Accordingly, failure to so advise the defendant is error. (*People* v. *Solomos, supra*, 83 Cal. App.3d at p. 953; *People* v. *Thomas, supra*, 43 Cal.App.3d 862, 867-868.) It is also true that, "a person may waive the privilege against self-incrimination. But any such waiver 'must be informed and intelligent. . . .'" (*Killpatrick* v. *Superior Court* (1957) 153 Cal.App.2d 146, 150 [314 Cal.Rptr. 164].)

██ In examining the record in light of the law as set out above, we fail to find error. The record reveals two specific instances when the trial court advised defendant of his right to decline to testify. In addition, defendant actually acknowledged the existence of his Fifth Amendment right.

Further, we find defendant made a knowing and intelligent waiver of his Fifth Amendment right. ▆▆ The context in which the term "knowing and intelligent waiver" is used refers to whether defendant understood the availability of the Fifth Amendment and the consequences of a decision to exercise or not to exercise the right. ▆▆ Defendant was fully aware that in testifying he was subjecting himself to (in his own words), "...her [the prosecutor's] skilled cross-examination and scrutiny in this matter." When combined with defendant's awareness of the availability of the Fifth Amendment, this statement is sufficient for this court to conclude defendant was aware of the consequences of his action.

Defendant argues there was not an intelligent waiver as under the circumstances he acted irrationally. The record does not support this claim. Defendant does not refer to any specific instances of incompetency or irrationality nor do we find any which would have required the trial court to appoint counsel under Penal Code section 1368, subdivision (a), requiring such appointment when "a doubt arises in the mind of the judge as to the mental competency of the defendant...."

▆▆ It also appears defendant uses "knowing and intelligent" not in the context of an awareness of the availability and the consequence of the Fifth Amendment but rather in the context of whether defendant's waiver was intelligent relative to trial tactics from the perspective of an experienced trial attorney. The term "knowing and intelligent" in its proper context here is not susceptible to such an interpretation. When a defendant elects to forgo his Fifth Amendment right, whether it was "intelligent" is not determined against a standard of what an experienced trial attorney would have considered the most optimum trial tactic, but whether or not the defendant was informed of the availability and the consequences of the right he was electing to waive. The logical extension of defendant's argument would necessitate the trial court determining if a waiver was the most "intelligent" trial tactic before finding such a waiver to be valid. That would entail placing the exercise of a personal right under supervision of the trial court. There is no authority for such a proposition.

## IV

▆▆ Defendant contends the trial court erred in failing to grant a new trial or to modify the verdict as the verdict was not supported by

the evidence. Defendant cites Penal Code section 1181, subdivision 7, in support of his contention. That subdivision authorizes the trial court to grant a new trial upon application by the defendant "[w]hen the verdict or finding is contrary to law or evidence . . . ." Subdivision 7 also provides that the court may, in lieu of granting a new trial, modify the verdict or finding by reducing the punishment. (See *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420, 439-440 [134 Cal.Rptr. 650, 556 P.2d 1101].)

■ A motion for a new trial, or in lieu of a new trial a modification of a verdict by imposing a lesser sentence based upon a claim of lack of substantial evidence is addressed to the discretion of the trial judge who is required to independently re-examine the evidence. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289]; *People* v. *McClellan* (1980) 107 Cal.App.3d 297, 301 [165 Cal. Rptr. 603].) The decision of the trial court will not be reversed absent a showing of clear abuse of discretion. (*People* v. *Serrato, supra*, at p. 761; *People* v. *McClellan, supra*, at p. 301.) Our function is to determine whether there is substantial evidence including reasonable inferences derived therefrom, to support the finding actually made. (*People* v. *Bard* (1968) 70 Cal.2d 3, 4-5 [73 Cal.Rptr. 547, 447 P.2d 939]; *People* v. *Greene* (1973) 34 Cal.App.3d 622, 649 [110 Cal.Rptr. 160].)

■ The entire thrust of the defense was that the incident never occurred but was an allegation derived from a teenager's resentment of parental authority. In direct conflict with this defense is the testimony by L. that defendant raped her. This testimony was corroborated by the victim's mother and L.'s brother. Specifically, the victim's mother, defendant's wife, testified defendant had told her he had been sexually intimate with L. Further, the examining physician found medical evidence of past sexual activity but due to the delay between the act and examination, the physician could not say when the sexual activity occurred. L. testified that she only had sexual contact with the defendant. The denial of the allegations created a conflict in the evidence that the jury and the trial court had the obligation to resolve and did so against defendant. We are bound by the axioms of appellate review that we do not weigh or resolve conflicts in evidence or judge credibility, and that the record must be examined in the light most favorable to the respondent. (*People* v. *Vann* (1974) 12 Cal.3d 220, 225 [115 Cal.Rptr. 352, 524 P.2d 824]; *Drzewiecki* v. *H & R Block, Inc.* (1972) 24 Cal.App.3d

695, 705-706 [101 Cal.Rptr. 169].) We conclude that substantial evidence supports the conviction.

Defendant requests this court to exercise its statutory authorization under Penal Code section 1181, subdivision 7, to modify the judgment of conviction from rape (Pen. Code, § 261, subd. 3) to unlawful sexual intercourse with a female under the age of 18. (Pen. Code, § 261.5.) We have already determined the evidence supports the finding of the jury and the trial court. The record does not indicate that this is a case where the statutory authorization to modify the judgment should be exercised.

The judgment is affirmed.

Puglia, P. J., and Reynoso, J., concurred.