Filed 5/24/24  P. v. Graham CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B331633 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA046159) |
| v. | |
| BORIS GEORGE GRAHAM, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martin Larry Herscovitz, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## MEMORANDUM OPINION[1]

Penal Code section 1172.6[2] authorizes a trial court to resentence a defendant who was convicted under a theory of felony murder if the prosecution fails to prove beyond a reasonable doubt that under current law, the defendant was a major participant in the underlying felony who acted with reckless indifference to human life. (See *People v. Basler* (2022) 80 Cal.App.5th 46, 50–51, 54–56 & fn. 2 (*Basler*).) Here, the trial court found the prosecution discharged that burden. Because defendant Boris George Graham fails to show that substantial evidence does not support the order denying his petition, we affirm.

## A.    Procedural Background[3]

We summarize only those portions of the procedural history relevant to this appeal. In our Discussion, *post*, we describe additional facts relevant to resolving the issues before us.

---

[1] We resolve this case by memorandum opinion because it "raise[s] no substantial issues of law or fact . . . . " (Cal. Stds. Jud. Admin., § 8.1.)

[2] Undesignated statutory citations are to the Penal Code. Prior to June 30, 2022, section 1172.6 was codified in section 1170.95. (See Stats. 2022, ch. 58, §§ 10, 47 [Assem. Bill No. 200, which renumbered § 1170.95 as § 1172.6, and provided that the statute took effect immediately on June 30, 2022]; *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3 [noting that Assem. Bill No. 200 renumbered former § 1170.95 to § 1172.6 without any substantive change].) For the sake of clarity and consistency, we refer to the statute as section 1172.6.

[3] In describing the procedural history and the evidence considered by the trial court in ruling on Graham's petition for

The People filed an information charging Graham with murder, in violation of section 187, subdivision (a) (count 1); kidnapping to commit robbery, in violation of section 209, subdivision (b)(1) (count 2); kidnapping to commit carjacking, in violation of section 209.5, subdivision (a) (count 3); first degree robbery, in violation of section 211 (count 4); first degree burglary, in violation of section 459 (count 5); carjacking in violation of section 215, subdivision (a) (count 6); and evading an officer causing death, in violation of Vehicle Code section 2800.3 (count 7).  Pursuant to section 190.2, subdivision (a)(17), the People averred as special circumstances that Graham committed the murder while he was engaged in the commission of robbery, carjacking, kidnapping, and burglary.  Additionally, pursuant to section 12022, subdivision (a)(1), the People alleged that in the

---

resentencing, we rely in part on admissions made by the parties in their appellate briefing, and on assertions made by the Attorney General that Graham does not contest in his reply brief. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by respondent was correct because "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

3

commission of the charged offenses, a principal was armed with a firearm.

At Graham's jury trial, there was evidence that in February 1999, Graham and Kirell Taylor brought Christopher Rawlings into his home in handcuffs and took several valuable belongings; after Rawlings's wife saw the two robbers push Rawlings down in the garage, she quietly retreated into the home, telephoned the police, gathered her two small children, and hid on the rooftop of the home with the children; Graham and Taylor put Rawlings into the trunk of his automobile; Taylor sat in the driver's seat and Graham sat in the front passenger seat; Taylor thereafter drove at high speeds to evade the police while Rawlings was still in the trunk of the automobile; the vehicle crashed at the conclusion of the police chase, causing Rawlings to be ejected from the trunk; Rawlings later died from blunt force trauma to his head; and Taylor and Graham fled the scene of the crash.[4]

The jury found Graham guilty on all seven counts, concluded the murder was in the first degree, and found true the principal armed with a firearm and special circumstance allegations. The trial court sentenced Graham to life imprisonment without the possibility of parole, doubled pursuant to the "Three Strikes" law, on count 1, plus a consecutive term of one year in prison for the firearm enhancement. The court imposed but stayed sentences on the remaining counts pursuant

---

[4] Taylor was separately tried by a jury and convicted of Rawlings's murder, kidnapping for robbery, kidnapping for carjacking, two counts of second degree robbery, first degree burglary, two counts of carjacking, and evading an officer causing death.

to section 654.  In August 2009, we issued an unpublished opinion affirming the judgment.

In January 2022, counsel filed a section 1172.6 resentencing petition on Graham's behalf.  The trial court later concluded Graham had made a prima facie showing under the statute.  At the evidentiary hearing held on June 8, 2023, the court admitted the trial record filed in Graham's prior appeal, and Graham testified in support of his petition.  The court found Graham was a major participant who acted with reckless indifference to human life and denied the petition.  Graham timely appealed the order denying his resentencing petition.

## B.    Discussion

### 1.    Standard of Review

In his opening brief, Graham acknowledges that "[f]actual determinations made below are entitled to great weight when supported by the record," but cites an appellate decision regarding a habeas corpus petition for the proposition that "if the difference of opinion with the lower court is not based on the credibility of live testimony, such deference is inappropriate." (Citing *In re Sodersten* (2007) 146 Cal.App.4th 1163, 1223.)

The Attorney General counters that the deferential substantial evidence standard governs our review of the trial court's finding that Graham was a major participant who acted with reckless indifference to human life, regardless of the extent to which the court relied upon live witness testimony.  Graham does not respond to this argument in his reply brief.  Instead, Graham maintains that "there is no substantial evidence that [he] acted with reckless indifference to human life."  (Boldface & capitalization omitted.)

5

The Attorney General has identified the correct appellate standard. "[A] trial court's decision denying a petition under section 1172.6 following an evidentiary hearing is predominantly a question of fact" that is reviewed for "substantial evidence." (See *People v. Underwood* (2024) 99 Cal.App.5th 303, 314 (*Underwood*).) "Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citations.]" (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) " 'If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.' [Citation.]" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1363, italics omitted.) Under the substantial evidence standard, "we *must* begin with the presumption that the evidence . . . *was* sufficient" to support the trial court's findings, "and the defendant bears the burden of convincing us otherwise." (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573–1574 (*Sanghera*).)

Our sister Courts of Appeal "have uniformly rejected" the argument that in reviewing the denial of a section 1172.6 petition following an evidentiary hearing, "we need not defer to the trial court's factual findings" that "are based on a cold record, [instead of] live testimony and associated credibility determinations." (See *Underwood*, *supra*, 99 Cal.App.5th at pp. 313–314 [collecting cases].) We follow our colleagues' approach. (See *The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529 ["We, of course, are not bound by the decision of a sister

6

Court of Appeal.  [Citation.] . . .  '[W]e respect stare decisis, however, which serves the important goals of stability in the law and predictability of decision.  Thus, we ordinarily follow the decisions of other districts without good reason to disagree.' "].)

> 2.  *Graham Forfeited His Challenge to the Trial Court's Finding That He Was a Major Participant*

In Graham's opening brief, he argues, "[T]he prosecution failed to prove beyond a reasonable doubt that [Graham] acted with reckless indifference to human life . . . ."  Apart from a heading in which Graham asserts "the prosecution failed to prove beyond a reasonable doubt that [Graham] *was a major participant* who acted with reckless indifference to human life" (boldface & capitalization omitted, italics added), Graham does not argue in his opening brief that the People failed to show he was a major participant.

In his reply brief, Graham states, "[Graham] has never argued that he was not a major participant in a robbery but only that he did not act with reckless indifference to life.  [Graham] was not a major participant in the kidnap[p]ing or car jacking, which appeared to be unplanned, or at least unknown to [Graham] until it happened and [Graham], certainly, could not have foreseen the car chase and ultimate crash."  Graham does not support this new argument with any citation to the record or legal authority.

Given Graham's briefing, we conclude Graham has forfeited his challenge to the trial court's finding that he was a major participant, which is an element of first degree felony murder.  (See *Basler*, *supra*, 80 Cal.App.5th at p. 54, fn. 2 [discussing the findings required for first degree felony murder]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*) [" '[E]very

7

brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may . . . pass it without consideration.  [Citations.]' [Citations.]  This principle is especially true when an appellant makes a general assertion, unsupported by specific argument, regarding insufficiency of evidence."]; *People v. Flint* (2018) 22 Cal.App.5th 983, 1006, fn. 17 (*Flint*) [noting that an appellate court may " 'decline to consider any factual assertion unsupported by record citation at the point where it is asserted[,]' " and that " '[a]n appellate court "will not develop the appellants' arguments for them" ' "]; *People v. Taylor* (2004) 119 Cal.App.4th 628, 642–643 (*Taylor*) [concluding that a defendant had forfeited a contention by raising it for the first time in a reply brief].)

> 3.   *Graham Fails To Demonstrate the Trial Court Erred In Finding He Acted With Reckless Indifference to Human Life*

In concluding Graham acted with reckless indifference to human life, the trial court found that Graham "knew that guns were involved and the car was driving in excess of 100 miles an hour"; Graham "possessed and used a firearm" during the incident; and one could infer "there were two guns involved" from Rawlings's wife's trial testimony that she saw two perpetrators standing over her husband.  The court further indicated that Graham was near the victim when the killing occurred, and remarked that Graham "did have the opportunity to stop the killing, to slow down . . . Taylor, and . . . to assist [Rawlings] or at least check in on the status or condition of . . . the victim . . . ."  The court also found the crime lasted "a relatively long period of time . . . consider[ing] the arrival at the house, waiting for . . .

Rawlings to arrive home, . . . going through the house, [a] certain degree of ransacking, placing . . . Rawlings in the trunk, and the time of the pursuit." The court acknowledged the record did not establish that Graham was aware that Taylor was "likely to kill." Lastly, the court indicated it did not find credible Graham's testimony that "he told . . . Taylor to slow down," and the court opined that Graham could have prevented Rawlings's death by "wrestling the steering wheel from . . . Taylor" or applying the brake of the vehicle by "forcing [Graham's] foot across the floor boards . . . ." The court thus followed the proper legal framework for its analysis.[5]

On appeal, Graham argues the trial court erred in rejecting his testimony that only one gun was involved in the robbery. Graham also asserts, "The court inexplicably credited not what the witnesses said at [Graham's] trial but prior statements . . . attributed to the witnesses [that were] introduce[d] for impeachment." Next, Graham maintains that "Taylor was the planner of the event" and Graham "had no way of knowing . . . that the incident would turn into a carjacking/[]kidnapping in which the robbery victim was accidentally killed." Additionally,

---

[5] (See *People v. Clark* (2016) 63 Cal.4th 522, 618–623 (*Clark*) [holding that in determining whether a defendant acted with reckless indifference to human life, a court may consider (1) the defendant's "knowledge of weapons, and [the] use and number of weapons" involved in the offenses; (2) the defendant's "physical presence at the crime and opportunities to restrain the crime and/or aid the victim"; (3) "whether a murder came at the end of a prolonged period of restraint of the victim[ ] by [the] defendant"; (4) the "defendant's knowledge of [his or her] cohort's likelihood of killing"; and (5) the "defendant's efforts to minimize the risks of . . . violence," italics & capitalization omitted].)

Graham contends the trial court's suggestion that he "could have prevented the death by making Taylor slow down or simply grabbed the wheel of a car traveling 100 mph is not reasonable, as it would have been likely to ensure not prevent death."  "[A]s for helping Rawlings," Graham contends (a) "the police were chasing them and would surely provide more competent assistance than [Graham] could have provided," and (b) "the police were at the scene within seconds" of the crash.  As explained below, Graham fails to establish error under the deferential substantial evidence standard of review.[6]

Graham acknowledges the People introduced evidence at trial that Taylor had told police:  (a) Taylor brought two guns to the robbery; (b) after Taylor took certain items of Rawlings's property, Graham put Rawlings into the trunk of the vehicle; and (c) following the crash, Taylor and Graham fled the scene.  Graham also acknowledges there was evidence he had admitted to two witnesses that after he and Taylor committed a robbery, Graham and Taylor put the robbery victim into the trunk of a vehicle that later crashed during a police chase.  Graham further acknowledges his testimony at the evidentiary hearing indicating:  (a) Graham participated in the robbery with Taylor; (b) Graham held a pistol during a brief period while Taylor handcuffed Rawlings; (c) after Taylor heard a call on his police scanner, Taylor and Graham got into Rawlings's car, and Taylor drove the vehicle at a high speed in an attempt to evade the police; (d) Graham knew Rawlings had been forced into the trunk

_____

[6] We decline to address Graham's argument that his actions were not the proximate cause of Rawlings's death because Graham raises that contention for the first time in his reply brief.  (*Taylor, supra*, 119 Cal.App.4th at pp. 642–643.)

10

of the vehicle prior to the police chase; and (e) Graham fled the scene of the crash without checking on Rawlings's condition.

Notwithstanding Graham's arguments to the contrary, the trial court could have inferred from this evidence that Graham disregarded a grave risk that the high-speed police chase would result in Rawlings's death.[7]  (See *Clark*, *supra*, 63 Cal.4th at p. 621 [indicating that a defendant acts with reckless indifference to human life if he or she "disregard[s] a 'grave risk of death' "].)  Furthermore, Graham's argument that the court erred in relying on "prior statements . . . attributed to the witnesses introduce[d] for impeachment" fails because he offers no analysis or citation to authority to support it.  (*Stanley*, *supra*, 10 Cal.4th at p. 793; see also *People v. Johnson* (2018) 6 Cal.5th 541, 583 [observing that under certain circumstances, "[a]n out-of-court statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted"].)

Regardless of whether Graham ought to have applied the brake of the automobile or grabbed the steering wheel from

---

[7]  In observing that the robbery was "still in progress" when Graham and Taylor fled from the police, the trial court remarked "both kidnapping and carjacking based on the natural and probable consequences theory is totally reasonable if the only plan was to rob . . . Rawlings and not kidnap him or carjack him."  Graham asserts this remark demonstrates that the court improperly relied on the natural and probable consequences theory.  We do not address this contention because we have already concluded that substantial evidence established Graham assisted Taylor in forcing Rawlings into the trunk just before the two robbers used the vehicle to flee from the police.  (See *People v. Camacho* (2022) 14 Cal.5th 77, 123 [" '[I]f the [trial court's] ruling was correct on any ground, we affirm.' "].)

Taylor during the police chase, the trial court reasonably concluded that Graham failed to undertake any measures to prevent Rawlings's death.  This is because the court was entitled to disregard Graham's testimony that he told Taylor to slow down.  (See *Sanghera*, *supra*, 139 Cal.App.4th at p. 1572 [" ' " '[We do] not substitute our evaluation of a witness's credibility for that of the fact finder.' " ' "].)

Lastly, we reject Graham's claim that it was unnecessary for him to assist Rawlings because "the police were at the scene within seconds" of the crash.  Graham fails to support this contention with any citation to the record.  (*Flint, supra*, 22 Cal.App.5th at p. 1006, fn. 17.)  In fact, Graham represents in his briefing he had testified that in fleeing from the vehicle crash, "[h]is focus was on getting away" and he "did not think about Rawlings . . . ."  Graham's own statements demonstrating that he had no interest in offering aid to Rawlings thus also support the trial court's finding Graham acted with reckless indifference to human life.  (See *Clark*, *supra*, 63 Cal.4th at p. 619 [noting that "appellate courts have considered relevant a defendant's failure to provide aid while present at the scene"].)  Indeed, Graham's indifference to Rawlings's life is underscored by evidence adduced at trial that the engine of the vehicle caught fire after crashing, and that Rawlings was still alive, albeit nonresponsive, for a short time after the collision.

In sum, Graham fails to establish that substantial evidence does not support the trial court's finding he acted with reckless indifference to human life.

## DISPOSITION

We affirm the trial court's order denying defendant Boris George Graham's petition for resentencing.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.