Filed 1/27/26; Certified for Publication 2/19/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| In re | B344569 |
|---|---|
| TOMMIE LAWSON LYNEX, | (Los Angeles County Super. Ct. No. PA034126) |
| on Habeas Corpus. | |

ORIGINAL PROCEEDING; petition for writ of habeas corpus, Kevin S. Rosenberg, Judge. Petition construed as a petition for writ of mandate. Petition granted.

Tommie Lawson Lynex, in pro. per., for Petitioner.

David Lee, Court Counsel, for Respondent Superior Court of Los Angeles County.

Nathan J. Hochman, District Attorney of Los Angeles County, Cassandra Thorp and Matthew Brown, Deputy District Attorneys, for Real Party in Interest the People of the State of California.

_____

In 2000, a jury convicted petitioner Tommie Lawson Lynex of first degree murder and found true a firearm enhancement allegation under Penal Code section 12022.53, subdivision (d).[1] The trial court sentenced Lynex to 50 years to life in prison.

Approximately 20 years later, the Legislature enacted the California Racial Justice Act of 2020 (Racial Justice Act or the Act; Stats. 2020, ch. 317), which authorizes prisoners to seek habeas relief on the ground the state sought or obtained their convictions or sentences based on race, ethnicity, or national origin. (Standards of Review & Applicable Law, part B, *post* [describing the Act].) In 2025, Lynex, who claims to be an African American man,[2] filed a petition for writ of habeas corpus under the Racial Justice Act. Lynex attached to his petition a chart from the Los Angeles County District Attorney's Office (District Attorney) that discloses the racial and ethnic makeup of individuals who were charged with murder and a firearm enhancement under section 12022.53, subdivision (d) in 1998, 1999, and 2000. Among other things, the chart shows that the District Attorney charged far more Black defendants with

---

[1] Undesignated statutory references are to the Penal Code. When Lynex perpetrated the murder in 1999, section 12022.53, subdivision (d) provided in pertinent part: "[A]ny person who is convicted of a felony specified in subdivision (a), [e.g., murder,] . . . and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused . . . death, to any person other than an accomplice, shall be punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony." (See Stats. 1998, ch. 936, § 19.5.)

[2] (See fn. 5, *post*.)

murder and the firearm allegation than White defendants during that three-year period. Lynex sought appointment of counsel in his petition. The trial court denied Lynex's petition in its entirety.

We issue a writ of mandate directing the trial court to vacate its order denying Lynex's petition. First, we conclude the trial court erred in ruling that Lynex had to make a prima facie showing of entitlement to relief to secure appointment of counsel. Rather, to obtain counsel, the Racial Justice Act requires habeas petitioners to plead a plausible allegation of a violation of the Act. Second, the trial court's denial of Lynex's request for counsel was erroneous because regardless of whether he satisfied the minimal pleading standard governing that request, the court was unaware of its discretion to grant him leave to amend the petition to plead a plausible allegation of a Racial Justice Act violation. Lastly, the trial court erred in invoking the prohibition on successive habeas petitions because Lynex was not required to address procedural bars to relief at this initial stage of the proceedings. Upon issuance of our writ of mandate, the trial court shall assess whether Lynex's petition states a plausible claim under the Racial Justice Act, and, if it finds Lynex failed to satisfy that standard, then the court shall consider whether to exercise its discretion to permit him to file an amended pleading.

**PROCEDURAL BACKGROUND[3]**

We summarize only those facts pertinent to our disposition of this writ proceeding.

Lynex fatally shot another man in 1999. In 2000, a jury convicted Lynex of first degree murder and found true a firearm enhancement allegation under section 12022.53, subdivision (d). The trial court sentenced Lynex to a prison term of 50 years to life. This court affirmed the judgment in an unpublished opinion. (*People v. Lynex* (July 17, 2001, B145639) [nonpub. opn.] at pp. 1, 5.)[4]

In January 2024, Lynex filed a petition in the trial court for writ of habeas corpus under the Racial Justice Act. Lynex claimed, inter alia, the police failed to preserve the victim's clothing and the firearm enhancement violated the Racial Justice Act's prohibition on imposition of a sentence based on a defendant's race. The trial court denied the petition in April 2024.

---

[3] We derive our Procedural Background in part from admissions in the parties' briefing, undisputed aspects of the trial court's ruling, and assertions made by the District Attorney that Lynex does not dispute in his reply brief. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 772, fn. 2, 773–774 (*Association for Los Angeles Deputy Sheriffs*) [employing this approach]; see also *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by the respondent was correct because the "defendant did not dispute [the] respondent's claim in his reply"].)

[4] We, sua sponte, take judicial notice of the prior opinion affirming the judgment. (Evid. Code, §§ 452, subd. (d), 459.)

On January 2, 2025, Lynex filed another petition for writ of habeas corpus under the Racial Justice Act in the trial court. Lynex requested appointment of counsel to prepare a discovery motion under the Act, and raised three claims: (1) the police improperly disposed of the victim's property; (2) the police's identification procedures were unduly prejudicial and impermissibly suggestive; and (3) there exist racial disparities in charging and sentencing criminal defendants.[5]

Included with Lynex's petition is a chart he obtained from the District Attorney that shows filings and declinations regarding charges for murder with a firearm allegation under section 12022.53, subdivision (d) for the years 1998, 1999, and 2000.[6] We reproduce that chart below:

---

[5] In a declaration Lynex filed in support of the petition, he identified himself as an African American man.

[6] Although the chart's heading indicates it covers "**CALENDAR YEARS 1997 - 2000**," the District Attorney represents the chart shows "no filings from 1997" because section 12022.53 did not become effective until January 1, 1998.

PC 187 FILINGS AND DECLINATIONS WITH ALLEGATION PC 12022.53(d)
CALENDAR YEARS 1997 - 2000

| Unique Defendants By Action/Year By Race | Filed 1998 | 1999 | 2000 | Declined 1998 | 2000 | Total |
|---|---|---|---|---|---|---|
| AMERICAN INDIAN | | | 1 | | | 1 |
| BLACK | 42 | 84 | 97 | | | 223 |
| CHINESE | | 3 | | | | 3 |
| FILIPINO | 2 | | 2 | | | 4 |
| HISPANIC | 94 | 149 | 142 | 4 | 2 | 391 |
| MEXICAN | 4 | 8 | 6 | | | 18 |
| OTHER | 2 | 1 | 5 | | | 8 |
| OTHER ASIAN | 2 | 5 | 3 | | | 10 |
| WHITE | 11 | 14 | 13 | | | 38 |
| (blank) | 1 | 1 | 1 | | | 3 |
| Total | 158 | 265 | 270 | 4 | 2 | 699 |

On February 13, 2025, the trial court denied Lynex's habeas petition.[7] The court found Lynex's Racial Justice Act claims were successive and thus procedurally barred. The court also found Lynex failed to allege facts showing that the police's destruction of the victim's property "was tinged by explicit or implicit racial animus," or that racial animus or bias played any role in the police's identification procedures. Additionally, the court ruled Lynex failed to "make any specific allegation of racial disparity in the prosecution's seeking or obtaining convictions" "or racial disparity in sentencing." Lastly, the court stated: "Prior to the court appointing counsel and giving leave for counsel to amend the petition, [Lynex] must first allege facts that would

---

[7] The trial judge who denied this habeas petition is not the judicial officer who sentenced Lynex.

establish a violation of section 745, subdivision (a) to make a prima facie showing that he is entitled to relief.  (§ 1473, subd. (e).)  Because [Lynex] has failed to make a prima facie showing establishing a violation of section 745, subdivision (a), [Lynex] is not entitled to appointment of counsel under section 1473, subdivision (e)."[8]

On March 10, 2025, Lynex filed in this court a petition for writ of habeas corpus in pro. per.  On June 4, 2025, the court clerk directed the People to file an opposition to the petition by July 2, 2025.  The People did not respond to the clerk's correspondence.

On August 22, 2025, this court construed Lynex's pending habeas petition as a petition for writ of mandate and ordered the trial court either to (1) vacate its February 13, 2025 order "denying [Lynex's] request for appointment of counsel in preparation for filing a Racial Justice Act petition" and issue a new order appointing counsel for Lynex, or (2) show cause why this court should not issue a writ of mandate directing the trial court to do so.  The trial court's counsel thereafter submitted a minute order from the trial court dated September 5, 2025.  In that minute order, the trial court stated:  "The court respectfully declines to vacate its February 13, 2025 order denying . . . Lynex's request for appointment of counsel to assist in the preparation of filing a Racial Justice Act petition.  As noted in the

---

[8] As we explain in our Standards of Review & Applicable Law, parts B.1–B.2, *post*, section 745, subdivision (a) sets forth four categories of conduct that establish a violation of the Racial Justice Act, and section 1473, subdivision (e) governs, inter alia, the appointment of counsel for habeas petitioners raising Racial Justice Act claims.

7

court's February 13, 2025 order, [Lynex's] claims are procedurally barred and he failed to make a prima case [*sic*] for relief under the RJA."

On October 16, 2025, this court ordered the trial court to show cause why a peremptory writ should not issue directing the trial court to vacate its February 13, 2025 order and issue a new order appointing counsel for Lynex. Thereafter, the District Attorney filed a return in opposition to the petition for writ of mandate on behalf of the People, and Lynex filed a reply.

## STANDARDS OF REVIEW AND APPLICABLE LAW

### A.    Standards of Review

"[W]hen the issue [on review] . . . is purely legal, such as the proper interpretation and application of a statute or constitutional provision, our review is de novo." (See *In re Lugo* (2008) 164 Cal.App.4th 1522, 1535.) "Our fundamental task in interpreting a statute is to ascertain the Legislature's intent so as to effectuate its purpose. [Citation.] We begin with the text of the statute and give the words their usual meaning while construing them in light of the statutory framework as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. [Citation.] If the language ' " 'permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] . . . . " ' [Citation.]" (*People v. Carter* (2023) 97 Cal.App.5th 960, 967 (*Carter*).)

"Discretionary decisions by the trial court are generally subject to appellate review under the abuse of discretion standard to determine if they were within the bounds of some

8

applicable legal criteria." (*People v. Hodge* (2024) 107 Cal.App.5th 985, 998.)

## B.    The Racial Justice Act

In 2020, the Legislature enacted the Racial Justice Act. (*McIntosh v. Superior Court* (2025) 110 Cal.App.5th 33, 39, 43 (*McIntosh*).)  "The purpose of the [Act] is to 'purge racial discrimination from our criminal justice system' [citation]" (*McIntosh*, at p. 43), and to " 'ensure that race plays no role at all in seeking or obtaining convictions or in sentencing' [citation]" (*People v. Lawson* (2025) 108 Cal.App.5th 990, 993 (*Lawson*), quoting Stats. 2020, ch. 317, § 2, subd. (i)).  "In passing the [A]ct, the Legislature recognized that racial bias 'persists' in our criminal justice system 'because courts generally only address racial bias in its most extreme and blatant forms.'  [Citation.] The [A]ct acknowledges that 'all persons possess implicit biases' that 'impact the criminal justice system,' and these biases 'tend to disfavor people of color.'  [Citation.]" (*Lawson*, at p. 993, quoting Stats. 2020, ch. 317, § 2, subds. (c) & (g).)

The Racial Justice Act added section 745 (see Stats. 2020, ch. 317, § 3.5), which sets forth legal standards governing a claim for relief under the Act.  (See Standards of Review & Applicable Law, part B.1, *post*.)  " '[T]he [Act also] amended section 1473, which identifies bases for prosecuting a petition for writ of habeas corpus, to add a subdivision governing the litigation of R[acial Justice Act] claims[,]' " to wit, subdivision (e) of the statute.  (See *McIntosh*, *supra*, 110 Cal.App.5th at p. 43.)  We next describe in further detail provisions of section 745 and subdivision (e) of section 1473 that are pertinent to this writ proceeding.

9

### 1.    Section 745

"The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin."  (§ 745, subd. (a).)  "[S]ection 745, subdivision (a) . . . sets forth four categories of conduct that, if proven by a preponderance of the evidence, establish a violation of the [Racial Justice A]ct."  (*Lawson, supra*, 108 Cal.App.5th at p. 998.)  "The defendant does not need to prove intentional discrimination."  (§ 745, subd. (c)(2).)

As relevant here, section 745, subdivision (a)(3) provides a violation of the Act occurs if:  "The defendant was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race, ethnicity, or national origin in the county where the convictions were sought or obtained."  (§ 745, subd. (a)(3).)

Similarly, section 745, subdivision (a)(4)(A) applies when:  "A longer or more severe sentence was imposed on the defendant than was imposed on other similarly situated individuals convicted of the same offense, and longer or more severe sentences were more frequently imposed for that offense on people that share the defendant's race, ethnicity, or national origin than on defendants of other races, ethnicities, or national

10

origins in the county where the sentence was imposed." (§ 745, subd. (a)(4)(A).)[9]

Section 745, subdivision (e) sets forth the remedies available in the event the trial court finds a violation of subdivision (a). (See § 745, subd. (e).) For instance, "After a judgment has been entered, if the court finds that a conviction was sought or obtained in violation of subdivision (a) [of section 745], the court shall vacate the conviction and sentence, find that it is legally invalid, and order new proceedings consistent with subdivision (a). If the court finds that the only violation of subdivision (a) that occurred is based on paragraph (3) of subdivision (a), the court may modify the judgment to a lesser included or lesser related offense. On resentencing, the court shall not impose a new sentence greater than that previously imposed." (*Id.*, subd. (e)(2)(A).) Another provision of subdivision (e) states: "After a judgment has been entered, if the court finds that only the sentence was sought, obtained, or imposed in violation of subdivision (a), the court shall vacate the sentence, find that it is legally invalid, and impose a new sentence. On resentencing, the court shall not impose a new sentence greater than that previously imposed." (*Id.*, subd. (e)(2)(B).)

Subdivision (h) of section 745 defines certain terms used in the statute, including " '[m]ore frequently sought or obtained' or

---

[9] Neither party clarifies whether a firearm enhancement under section 12022.53, subdivision (d) constitutes an "offense" for purposes of section 745, subdivision (a)(3) or a "sentence" under subdivision (a)(4)(A). We need not decide that issue because its resolution would not impact our disposition of the instant writ petition.

11

'more frequently imposed' " (§ 745, subd. (h)(1)), " '[p]rima facie showing[,]' " (*id.*, subd. (h)(2)), and " '[s]imilarly situated' " (*id.*, subd. (h)(6)). Of note, " '[m]ore frequently sought or obtained' or 'more frequently imposed' means [in pertinent part] that the totality of the evidence demonstrates a significant difference in seeking or obtaining convictions or in imposing sentences comparing individuals who have engaged in similar conduct and are similarly situated, and the prosecution cannot establish race-neutral reasons for the disparity." (*Id.*, subd. (h)(1).) "The evidence may include statistical evidence, aggregate data, or nonstatistical evidence. Statistical significance is a factor the court may consider, but is not necessary to establish a significant difference. In evaluating the totality of the evidence, the court shall consider whether systemic and institutional racial bias, racial profiling, and historical patterns of racially biased policing and prosecution may have contributed to, or caused differences observed in, the data or impacted the availability of data overall." (*Ibid.*)

### 2. Section 1473, Subdivision (e)

As a preliminary matter, we note that the District Attorney assumes that the version of section 1473, subdivision (e) that became effective on January 1, 2026 applies to the instant writ proceedings because it went into effect "before resolution of this petition . . . ." Lynex makes that assumption as well. Accordingly, we proceed on the assumption that version of subdivision (e) of section 1473 applies. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a *legal* or factual point, *controlling* in the disposition of the case[,]' " second & third italics added]; see also *People v. Tran* (2022)

12

13 Cal.5th 1169, 1206–1207 [noting that statutory amendments may apply retroactively to criminal cases under certain circumstances]; *County of Los Angeles v. Niblett* (2025) 116 Cal.App.5th 454, 458, fn. 2 [assuming for the sake of an appeal that the parties identified the version of the relevant statute that governed review of the trial court's ruling].)

Section 1473, subdivision (e)(1) clarifies that "[a]ny and all definitions and legal thresholds specified in Section 745 are controlling for purposes of claims alleging a violation of subdivision (a) of Section 745 contained within a habeas petition filed under this section." (§ 1473, subd. (e)(1).) Similarly, subdivision (e)(2) of section 1473 employs the following language to incorporate by reference the discovery procedures provided in section 745: "A petitioner, or their counsel, may file a motion for relevant evidence under subdivision (d) of Section 745 upon the prosecution of a petition under this subdivision, or in preparation to file a petition." (§ 1473, subd. (e)(2)). Subdivision (d) of section 745 in turn permits a defendant to move for "disclosure . . . of all evidence relevant to a potential violation of subdivision (a) [of section 745] in the possession or control of the state," which motion is subject to a "good cause" standard. (See § 745, subd. (d).)

Regarding appointment of counsel for a habeas petition raising a Racial Justice Act claim, section 1473, subdivision (e)(5) provides: "The petition shall state if the petitioner requests appointment of counsel and the court shall appoint counsel if the petitioner cannot afford counsel and either the petition pleads a *plausible allegation* of a violation of subdivision (a) of Section 745 or the State Public Defender requests counsel be appointed.

13

Newly appointed counsel may amend a petition filed before their appointment."  (§ 1473, subd. (e)(5), italics added.)

The statute requires the trial court to "issue an order to show cause why relief shall not be granted and hold an evidentiary hearing" "[i]f the petitioner makes a prima facie showing . . . ."  (See § 1473, subd. (e)(7)(B).)

The statute also restricts the trial court's authority to invoke procedural bars to a habeas petition raising a Racial Justice Act claim:  "A petition raising a claim of this nature for the first time, or on the basis of new discovery provided by the state or other new evidence that could not have been previously known by the petitioner with due diligence, shall not be deemed a successive or abusive petition."  (§ 1473, subd. (e)(3).)

Lastly, "[i]f the court finds a violation of subdivision (a) [of section 745], the court shall impose one or more of the applicable remedies outlined in subdivision (e) of Section 745."  (See § 1473, subd. (e)(8).)  As we observed in our Standards of Review and Applicable Law, part B.1, *ante*, section 745, subdivision (e) authorizes a court to, inter alia, reduce the sentence imposed on the defendant.

3.    *The Legislative Findings Accompanying the Amendments to Section 1473, Subdivision (e) and* McIntosh*'s Interpretation of the Statute*

As we noted above, section 1473, subdivision (e)(5) requires the trial court to appoint counsel for an indigent habeas petitioner if he or she "pleads a plausible allegation of a violation of subdivision (a) of Section 745 . . . ."  (See § 1473, subd. (e)(5).)  This text is terse.  Accordingly, we consider the findings included in the legislation that added this provision to the Racial Justice Act as an aid in interpreting the "plausible allegation" standard

14

set forth in the statute.  (See *ibid.*; see also *Carter, supra*, 97 Cal.App.5th at pp. 967–968 ["If the [statutory] language ' " 'permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] . . ." ' [Citation.]  [¶]  'In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration.' [Citation.]  Although such uncodified statements do not confer power, they 'properly may be utilized as an aid in construing a statute.' "].)

In the legislation amending section 1473, subdivision (e) effective January 1, 2026, the Legislature emphasized the "extremely low" showing a petitioner must make to obtain counsel:  "The [Act's] threshold to secure counsel is extremely low, and yet courts have denied counsel to litigants raising R[acial Justice Act] claims far more than they have appointed counsel. . . .  The Legislature reaffirms that the threshold showing for appointment of counsel does not require a prima facie showing, as correctly held by McIntosh v. Superior Court (2025) 110 Cal.App.5th 33, and should be construed as a minimal pleading requirement."  (See Stats. 2025, ch. 721, § 1, subd. (b) [Assem. Bill No. 1071, filed with Sec'y of State on Oct. 13, 2025]; see also Stats. 2025, ch. 721, § 3 [amending Pen. Code, § 1473].)

Because the Legislature cited *McIntosh* with approval, we detail its analysis of the pleading standard governing requests for appointment of counsel.  (Cf. *People v. Brown* (2016) 247 Cal.App.4th 1430, 1436 ["If the Legislature amends or reenacts the statute without changing the interpretation placed on that statute by the courts, ' "the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of

15

that statute." ' "].)  In *McIntosh*, a Black criminal defendant filed a habeas petition raising claims under the Racial Justice Act, and sought appointment of counsel to help him prosecute his petition. (*McIntosh*, *supra*, 110 Cal.App.5th at pp. 39–40.)  The defendant maintained, among other things, that the San Diego District Attorney's Office violated the Act by "charg[ing] gang enhancements (§ 186.22, subd. (b)) and enhancements for personal use of a firearm (§ 12022.53, subd. (d)) more frequently against similarly situated people who share [the defendant's] race than others . . . ."  (See *McIntosh*, at p. 40.)  The trial court denied the defendant's request for counsel based on its finding that he had not made the prima facie showing required for issuance of an order to show cause.  (*Id.* at p. 39.)  The defendant subsequently filed a habeas petition in the Court of Appeal, which the appellate court construed as a petition for writ of mandate concerning the trial court's denial of the defendant's request for counsel.  (See *id.* at pp. 40–41, 46–47.)

The *McIntosh* court issued a writ of mandate directing the trial court to vacate its order denying the habeas petition and reconsider the defendant's request for appointment of counsel. (See *McIntosh*, *supra*, 110 Cal.App.5th at pp. 39–40, 46, 48.)  The Court of Appeal held, "[T]he plain language of section 1473[, subdivision] (e) imposes a duty on trial courts to consider whether indigent petitioners who request counsel . . . are entitled to appointed counsel based on an assessment of the adequacy of the factual allegations in the habeas corpus petition, not an assessment of the overall sufficiency of the prima facie showing that must be met to obtain an [order to show cause]."  (*McIntosh*, at pp. 39–40.)  *McIntosh* explained the version of section 1473, subdivision (e) in effect prior to January 1, 2026 "require[d]

16

courts to determine whether '*the petition alleges facts that would establish a violation of* [*the Act*].' " (See *McIntosh*, at p. 44.) On the other hand, that prior version of the statute "require[d] courts to determine whether '*the petitioner has made a prima facie showing of entitlement to relief.*' " (See *ibid.*)[10]

*McIntosh* held, "[S]ection 1473[, subdivision] (e) limits the inquiry before the appointment of counsel to an assessment of the facial sufficiency of the factual allegations *in the petition*, and to consideration of whether they adequately allege a *violation* of the [Act]. By contrast, the inquiry before issuance of an [order to show cause] is manifestly broader than mere review of the adequacy of the factual allegations that appear in the petition." (*McIntosh, supra,* 110 Cal.App.5th at pp. 44–45.) The court found the two inquiries differ in these respects, regardless of whether "the prima facie showing that has long governed when an [order to show cause] w[ould] issue . . . [in] habeas corpus proceedings" applies to Racial Justice Act habeas petitions or the "definition of 'prima facie showing' . . . found in section 745, subdivision (h)(2)" instead governs. (See *McIntosh*, at pp. 41, 43–45.)[11] "The trial

---

**10** Conversely, the statute now requires the appointment of counsel for an indigent habeas petitioner if "the petition pleads a plausible allegation of a violation of [the Racial Justice Act,]" (see § 1473, subd. (e)(5)), and obligates the court to "determine if the petitioner has made a prima facie showing" (see *id.*, subd. (e)(7)(A)), instead of " 'a prima facie showing *of entitlement to relief* ' " (see *McIntosh, supra,* 110 Cal.App.5th at p. 44, some italics omitted).

**11** Section 745, subdivision (h)(2) states a " '[p]rima facie showing' " has been made if "the defendant produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred. For purposes of this section,

court therefore erred when it denied counsel on the ground that [the defendant] failed to meet the prima facie showing that is required to obtain an [order to show cause]." (*Id.* at p. 46.)

The *McIntosh* court also provided guidance to the trial court for its reassessment of the defendant's request for counsel. (*McIntosh, supra,* 110 Cal.App.5th at pp. 47–48.) Specifically, "The purpose of the *informal* first stage[ ]where . . . the court decides whether to appoint counsel when R[acial Justice Act] claims are raised[ ]is to allow for the 'identification of facially deficient petitions,' ones that are so clearly lacking in merit the court is justified in 'reject[ing] them summarily, without requiring formal pleadings.' [Citations.]" (*Id.* at p. 47.) Although " ' "[c]onclusory allegations made without any explanation of the basis for the allegations" ' are inadequate to establish a petitioner's initial pleading burden in habeas proceedings[,] [citation]" "the initial pleading requirements . . . 'do[ ] not place upon an indigent prisoner . . . any burden of complying with technicalities; [they] simply demand[ ] of him a measure of frankness in disclosing his factual situation.' [Citation.]" (*Id.* at p. 48.)

" '[T]o assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest.' [Citation.]" (*McIntosh, supra,* 110 Cal.App.5th at pp. 42–43; see also *id.* at p. 47 ["The informal response and reply, if requested, serve to assist the court in this 'screening function.' "].) Further, as we note in greater detail in Discussion, part B, *post*, *McIntosh*

---

a 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (§ 745, subd. (h)(2).)

18

recognized the trial court has discretion at the informal first stage to permit amendment of the petition or deny the petition without prejudice. (*McIntosh*, at p. 47.)

## DISCUSSION

As we noted earlier, section 1473, subdivision (e)(5) provides in relevant part that a habeas petition raising a claim under the Racial Justice Act "shall state if the petitioner requests appointment of counsel and the court shall appoint counsel if the petitioner cannot afford counsel and . . . the petition pleads a plausible allegation of a violation of subdivision (a) of Section 745 . . . ." (See § 1473, subd. (e)(5).) The District Attorney "do[es] not dispute that Lynex cannot afford counsel." The District Attorney nonetheless argues we should deny writ relief to Lynex because he did not plead a plausible allegation of a violation of the Act. The District Attorney further maintains the trial court correctly found that Lynex's habeas petition is procedurally barred.

In our Discussion, parts B and C, *post*, we reject these arguments. Before turning to those issues, we explain that the trial court applied the wrong legal standard in assessing Lynex's request for counsel. (Discussion, part A, *post*.)[12]

_____

[12] In a letter filed on May 23, 2025, Lynex requested judicial notice of a notice of filing of a notice of appeal seeking review of an order the trial court issued on February 28, 2025. We deny Lynex's request for judicial notice because he fails to explain what relevance this document has on our review of the trial court's February 13, 2025 order denying his habeas petition. (*Association for Los Angeles Deputy Sheriffs*, *supra*, 94 Cal.App.5th at p. 792, fn. 23 [noting that an appellate court

19

## A. The District Attorney Concedes, and We Agree, the Trial Court Erred In Requiring Lynex To Make a Prima Facie Showing of Entitlement to Relief To Secure Appointment of Counsel

The District Attorney acknowledges the trial court "applied the wrong legal standard" (boldface omitted) when it denied Lynex's request for counsel based on its conclusion he "failed to make a prima facie showing that he was entitled to relief." The District Attorney maintains Lynex's entitlement to counsel hinges on whether he pleaded a " 'plausible allegation of a violation of [the Racial Justice Act] . . . .' " (Quoting § 1473, subd. (e)(5).) We agree. (Procedural Background, *ante* [noting the trial court denied Lynex's request for counsel on the ground he failed to make a prima facie showing of entitlement to relief].)

## B. We Reject the District Attorney's Contention We Should Deny Lynex Writ Relief on the Ground He Failed To Plead a Plausible Racial Justice Act Claim

Notwithstanding the trial court's employment of the wrong legal standard to assess Lynex's request for appointment of counsel, the District Attorney argues we should not remedy this error by way of a writ of mandate because Lynex failed to "plead[ ] 'a plausible allegation of [a Racial Justice Act violation]' " for purposes of section 1473, subdivision (e)(5). In particular, the District Attorney maintains, (1) "The bare racial breakdown of offenders in a given period does not raise any inference of bias," and (2) Lynex "made no showing that there was any charging rate disparity between *similarly situated*

may deny a request for judicial notice of materials not relevant to its determination of the issues on review].)

suspects, i.e., that some significant number of White people (or some other group) who murdered someone with a gun could have been charged with murder with [a] gun allegation [under section 12022.53, subdivision (d)], but were not."

By arguing that Lynex cannot secure appointment of counsel "even under the correct standard," the District Attorney seems to be invoking the following rule of appellate procedure: " ' " '[A] ruling or decision, itself correct in law, will not be disturbed . . . merely because [it was] given for a wrong reason.' " ' " (See *People v. Camacho* (2022) 14 Cal.5th 77, 124.) That rule is inapplicable here. As we explain below, regardless of whether Lynex pleaded a plausible allegation of a Racial Justice Act violation, the trial court's denial of Lynex's request for appointment of counsel was erroneous because the court was unaware of its discretion to permit Lynex to amend his petition to satisfy the minimal pleading burden governing his request for counsel.

" ' "If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal." [Citation.] Simply stated, "an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard." ' [Citation.]" (*People v. K.D.* (2025) 110 Cal.App.5th 1, 19 (*K.D.*).)

In asserting we may review the sufficiency of Lynex's pleading in the first instance under section 1473,

21

subdivision (e)(5), the District Attorney overlooks a key discretionary component of a trial court's ruling on a request for appointment of counsel in this context. Specifically, the *McIntosh* court explained, "During this initial, informal stage," the trial court " 'has the authority to invite amended or supplemental habeas corpus petitions in the interests of justice.' [Citation.]" (See *McIntosh, supra,* 110 Cal.App.5th at pp. 46–47.) *McIntosh* observed that "the policy of '[l]iberality in permitting amendment is the rule' as it is in civil cases," and "[t]he availability of procedures permitting amendment of an unrepresented petitioner's petition is exceptionally important in the context of R[acial Justice Act] claims given the stated objective of the Legislature that litigants have meaningful opportunities to present their claims." (See *id.* at pp. 47–48.)[13] Thus, before ruling on a request to appoint counsel, a trial court may exercise its discretion to permit a defendant to amend his or her petition to satisfy section 1473, subdivision (e)(5)'s pleading standard.

As we explained in our Discussion, part A, *ante,* the trial court faulted Lynex for failing to make a prima facie showing of entitlement to relief under the Act, which is a more exacting showing than that required by subdivision (e)(5) of section 1473. The trial court's ruling predated: (1) *McIntosh*'s clarification that (a) a request for appointment of counsel does not call for "an assessment of the overall sufficiency of the prima facie showing that must be met to obtain an [order to show cause]" and (b) a

---

[13] *McIntosh* further explained, "An inexpertly drafted petition may also appropriately be denied without prejudice to filing a new petition that meets the requirements for stating a habeas corpus claim." (See *McIntosh, supra,* 110 Cal.App.5th at p. 47.)

trial court has discretion to permit a defendant to amend his or her petition to allege sufficient facts to secure appointment of counsel (see *McIntosh*, *supra*, 110 Cal.App.5th at pp. 40, 46–48 [opinion issued on Mar. 28, 2025]); and (2) the Legislature's findings that (a) *McIntosh* "correctly held" "the threshold showing for appointment of counsel does not require a prima facie showing" and (b) the standard for appointment of counsel is "extremely low" and "should be construed as a minimal pleading requirement" (see Stats. 2025, ch. 721, § 1, subd. (b) [Assem. Bill No. 1071, filed with Sec'y of State on Oct. 13, 2025]).

Accordingly, when the trial court denied Lynex's request for appointment of counsel, the court was unaware of its discretion to allow him to amend his petition to meet a pleading standard that is lower than the prima facie showing required for issuance of an order to show cause. Because a " ' "decision . . . influenced by . . . an unawareness of the full scope of [the court's] discretion" ' " or " ' "incorrect legal assumptions" ' " is erroneous and " ' "subject to reversal" ' " (see *K.D.*, *supra*, 110 Cal.App.5th at p. 19), we do not agree with the District Attorney's apparent argument that in denying Lynex's request for counsel, the trial court merely cited an erroneous reason for arriving at the legally correct result.

If the trial court ultimately determines after issuance of our writ of mandate that Lynex has not "plead[ed] a plausible allegation of a violation" of the Racial Justice Act (see § 1473, subd. (e)(5)), the court may then consider whether to exercise its discretion to grant Lynex leave to amend his petition.[14]

---

[14] Anticipating that Lynex may allege facts showing "the existence of a large disparity in charges compared to a group's percentage of the population," the District Attorney argues such averments would not "inherently raise[ ] a plausible allegation of

## C. The Trial Court Erred In Denying Lynex's Habeas Petition on the Ground It Was Procedurally Barred

In its February 13, 2025 ruling denying Lynex's habeas petition, the trial court acknowledged that Lynex claimed to have offered data " 'show[ing] a pattern of higher charging for people sharing his race in Los Angeles County.' "  The court found that Lynex's Racial Justice Act claim predicated on this data was "successive" and therefore "procedurally barred" because the court had rejected a similar claim in its April 2024 order denying his prior habeas petition.

The District Attorney argues the trial court "properly invoked [this] procedural bar[ ] to deny" Lynex's habeas petition because he "has shown no justification for his successive claims." (Boldface omitted.)  The District Attorney further contends the Legislature impliedly preserved this procedural bar in the Act by carving out of the definition of " 'successive or abusive petition[s]' " only those pleadings " 'raising a claim of this nature for the first time, or on the basis of new discovery provided by the

---

bias."  Specifically, the District Attorney maintains (1) "no one reasonably believes that gun murders are evenly distributed throughout the county"; and (2) "there is no reason to presume, in the absence of evidence, that the . . . District Attorney . . . was not charging virtually every gun homicide as a murder with the appropriate gun allegation during th[e] time" period in question.

We decline to render an advisory opinion as to the viability of allegations Lynex may include in an amended petition.  If Lynex later alleges facts indicative of a large disparity in charges compared to a racial group's percentage of the population, then the trial court may pass upon the sufficiency of those averments at the appropriate juncture.

state or other new evidence that could not have been previously known by the petitioner with due diligence . . . .' " (Quoting § 1473, subd. (e)(3).) In essence, the District Attorney maintains that at the "initial" " 'screening' " stage of the habeas proceedings (see *McIntosh*, *supra*, 110 Cal.App.5th at p. 47), Lynex was required to anticipate the bar on successive petitions and explain why he did not previously offer the aforementioned data to support his Racial Justice Act claim. We disagree.

*McIntosh* held that habeas petitioners raising Racial Justice Act claims are not required to "address and explain potential procedural bars" "to obtain appointment of counsel . . . ." (See *McIntosh*, *supra*, 110 Cal.App.5th at p. 45.) *McIntosh* explained that "section 1473[, subdivision] (e) limits the inquiry before the appointment of counsel to an assessment . . . of whether [the petition] adequately allege[s] a *violation* of the R[acial Justice Act,]" and does not call for a "broader" assessment of whether the petitioner is " 'entitle[d] to relief' " under the statute. (See *McIntosh*, at pp. 44–45.) Accordingly, the trial court erred in denying Lynex's request for counsel on account of his failure to anticipate and refute the potential applicability of the procedural bar on successive petitions.

We further note that whether the District Attorney's data is "evidence that could . . . have been previously known by the petitioner with due diligence" (see § 1473, subd. (e)(3)) is far from clear. The trial court did not make any findings on Lynex's due diligence as to discovery of this evidence. Furthermore, the District Attorney acknowledges: (1) Lynex obtained the data in question through "a Public Records Act request" "from the Los Angeles County District Attorney's Office," and (2) the District Attorney responded to this Public Records Act request via

25

correspondence dated April 11, 2024.  In any event, as we explained above, whether Lynex diligently sought discovery of this evidence is not relevant to the trial court's initial "assessment of the facial sufficiency of the factual allegations *in the petition*[ ] and . . . whether they adequately allege a *violation* of the R[acial Justice Act]."  (See *McIntosh*, *supra*, 110 Cal.App.5th at pp. 44–45.)

## DISPOSITION

Let a writ of mandate issue directing the trial court to (1) vacate its February 13, 2025 order denying petitioner Tommie Lawson Lynex's petition for writ of habeas corpus, and (2) conduct further proceedings consistent with this opinion.  We deny the request for judicial notice Lynex filed on May 23, 2025.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.

Filed 2/19/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| In re<br><br>TOMMIE LAWSON LYNEX,<br><br>on Habeas Corpus. | B344569<br><br>(Los Angeles County<br>Super. Ct. No. PA034126)<br><br>CERTIFICATION AND<br>ORDER FOR<br>PUBLICATION<br><br>[NO CHANGE IN<br>JUDGMENT] |


The opinion in the above-entitled matter filed on January 27, 2026 was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.


_____

ROTHSCHILD, P. J.          BENDIX, J.          M. KIM, J.